**MABON LIMITED, Appellant,**

v.

**AFRI–CARIB ENTERPRISES, INC., Appellee.**

No. 14–99–00228–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 14, 2000.

John A. Schmidt, Houston, for appellants.

Lewis K. Harley, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, ANDERSON and FROST.

## O P I N I O N

KEM THOMPSON FROST, Justice.

In this restricted appeal, appellant, Mabon Limited challenges the default judgment entered in favor of Afri–Carib Enterprises, Inc. on a breach of contract claim. Mabon asserts the trial court erred in entering the default judgment because (1) the contract contained an enforceable forum selection clause and an arbitration clause, (2) the contract was not binding or enforceable, and (3) the evidence is legally and factually insufficient to support the award of damages and the award of attorney's fees. We affirm the judgment of the trial court, as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Afri–Carib is a Texas corporation in the business of consulting with and assisting American companies involved in the oil and gas exploration industry in Africa. Mabon is an engineering and geophysical consulting firm formed under the laws of the Federal Republic of Nigeria.

In May 1989, and June 1990, Afri–Carib entered into a contract with TGS International Geophysical Company ("TGSI"), an independent consulting company involved in putting together geophysical data packages for multiple sales to the oil industry. Under this contract, TGSI was to assist Afri–Carib in securing required governmental permits and approvals to conduct an offshore geophysical survey of West African countries. In July 1990, Afri–Carib entered into a "Non–Circumvention, Non–Disclosure Agreement" (the "Agreement") with Mabon and Allan Quinn Isiguzo, a Nigerian individual. As part of the Agreement, Afri–Carib, Mabon, and Isiguzo entered into a joint venture in which they were to share information regarding contacts in furtherance of their venture and to award commissions and finder's fees to certain individuals from each enterprise entered into with other parties.

Subsequently, the president of Afri–Carib introduced Mabon to TGSI. The day after the parties entered into the Agreement, TGSI retained Mabon to represent it in an offshore geophysical survey of Nigeria. A few weeks later, Mabon and TGSI signed a letter of intent in which Mabon agreed to assist TGSI in securing all necessary government permits and approvals for TGSI. In a letter dated January 31, 1991, Mabon's president informed Afri–Carib's president that Mabon was terminating its relationship with Afri–Carib. The same day, Mabon and TGSI entered into a joint venture for the acquisition of seismic data for offshore Nigeria.

In July 1996, Afri–Carib, claiming Mabon had breached the Agreement, made a demand on Mabon in Nigeria for payment of commissions in the amount of $1,023,018.11 arising from Mabon's contract with TGSI. A few weeks later, Mabon replied that unless Afri–Carib's demand was withdrawn or supported with documentation, its attempt to "extort" money from Mabon would be reported to Nigerian law enforcement agencies.

In September 1996, Afri–Carib filed suit against Mabon in the 165th District Court of Harris County for breach of the Agreement for failing to pay Afri–Carib one-third of all commissions and payments Mabon received from TGSI. Mabon responded to the suit by filing "Defendant's Special Appearance and Original Answer." Approximately two years later, Mabon failed to appear for the bench trial. The trial court entered a default judgment against Mabon in the amount of $1,098,520.40 on Afri–Carib's breach of contract claim and also awarded Afri–Carib $300,000 in attorney's fees.

## II. STANDARD OF REVIEW ON RESTRICTED APPEAL

 Mabon directly attacks the trial court's judgment by restricted appeal. See TEX. R. APP. P. 30.[1] A direct attack on a judgment by restricted appeal must: (1) be brought within six months after the date of the judgment; (2) by a party to the suit; (3) who did not participate in the trial; and (4) error must be apparent from the face of the record. See Quaestor Invs., Inc. v. State of Chiapas, 997 S.W.2d 226, 227 (Tex.1999) (per curiam); Norman Communications v. Texas Eastman Co., 955 S.W.2d 269, 270 (Tex.1997) (per curiam). Review by restricted appeal affords the appellant a review of the entire case, just as in an ordinary appeal, with the only restriction being that any error must appear on the face of the record. See Norman Communications, 955 S.W.2d at 270. The face of the record for purposes of a restricted appeal consists of all the papers on file in the appeal, including the reporter's record. See id. A review of the entire case includes a review of legal and factual sufficiency claims. See id.

 A post-answer default judgment constitutes neither an abandonment of the defendant's answer nor an implied confession of any issues thus joined by the defendant's answer. See Stoner v. Thompson, 578 S.W.2d 679, 682 (Tex.1979). Judgment cannot be entered on the pleadings; instead, the plaintiff must offer evidence and prove his case as in judgment upon a trial. See id. Because Mabon filed an answer in this case, Afri–Carib had the burden to prove its claim and the resulting damages at trial.

1. The restricted appeal has replaced the writ of error. See former TEX. R. APP. 45, repealed September 1, 1997.

2. See Haynsworth v. The Corporation, 121 F.3d 956, 962–63 (5th Cir.1997) (citing The Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

3. It may be unreasonable to enforce a forum selection clause where: (1) the incorporation of the forum selection clause into the agree-

## III. ANALYSIS

### A. Forum Selection Clause

 In its first issue, Mabon asserts the trial court erred in entering the default judgment because the Agreement contains a forum selection clause providing that venue of this case lies in the Federal District of Nigeria. Mabon, relying on the presumption that forum selection clauses in international contracts are enforceable absent a showing that the enforcement of the clause is "unreasonable under the circumstances,"[2] asserts that Afri–Carib has not overcome the presumption that the forum selection clause in the Agreement is valid or demonstrated that it would be unreasonable under the circumstances to enforce it.[3] Before we reach the issue of reasonableness in enforcing the forum selection clause, we must first determine whether the forum selection clause at issue meets the threshold requirement of exclusivity by providing the courts of Nigeria with exclusive jurisdiction of all claims under the Agreement.

### 1. Exclusivity

 Texas law recognizes the validity of forum selection clauses. See Accelerated Christian Educ., Inc. v. Oracle Corp., 925 S.W.2d 66, 70 (Tex.App.-Dallas 1966, no writ). Forum selection clauses are enforceable in Texas if: (1) the parties have contractually consented to submit to the exclusive jurisdiction of another state, and (2) the other state recognizes the validity of such provisions. See Southwest Intelecom, Inc. v. Hotel Networks Corp., 997

ment was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state. See Haynsworth, 121 F.3d at 963.

S.W.2d 322, 324 (Tex.App.-Austin 1999, pet. denied). Thus, our initial inquiry is whether the parties in this case agreed that Nigeria would have exclusive jurisdiction over any of the claims asserted in this case. The forum selection clause in the Agreement states:

> It is also agreed between the parties [that] because of the multi-state and multi-country jurisdiction involved due to the locations of the principals, banks and depositories, etc., the laws of the Federal Government of Nigeria will apply and the Federal District of Nigeria shall have venue.

While this clause stipulates that Nigeria "shall have venue," it does not provide for exclusive jurisdiction in Nigeria; rather, the language is permissive in nature, indicating that the parties *may* bring suit in Nigeria but are not *required* to do so. Although the word "shall" is a mandatory term, in this context it simply means that the Nigerian courts shall be an acceptable venue for the assertion of claims; it does not provide for *exclusive* jurisdiction. *See, e.g., John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs., Inc.,* 22 F.3d 51, 53 (2d Cir.1994) (finding that clause providing that "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts" was not exclusive because it only mandated that Greek courts had jurisdiction); *Hunt Wesson Foods, Inc. v. Supreme Oil Co.,* 817 F.2d 75, 77 (9th Cir.1987) (finding that clause stating that "[t]he courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract" did not provide for exclusive jurisdiction because it only mandated that Orange County courts had jurisdiction); *First Nat'l City Bank v. Nanz, Inc.,* 437 F.Supp. 184, 187 (S.D.N.Y.1975) (finding that clause stating that "the Supreme Court of the State of New York, within any county of New York shall have jurisdiction of any dispute" did not provide New York courts with exclusive jurisdiction because while New York courts had jurisdiction, other forums may also be appropriate). The Austin Court of Appeals made a similar holding in *Southwest Intelecom, Inc.,* 997 S.W.2d at 323–325, finding that a clause which stated "[t]his Agreement shall be governed by the laws of the State of Minnesota. The Parties stipulate to jurisdiction and venue in Ramsey County, Minnesota, as if this Agreement were executed in Minnesota," did not provide Minnesota courts with exclusive jurisdiction. Instead, this clause merely operated to settle any question of whether Minnesota courts had jurisdiction. *See id.* at 326.

█ An enforceable forum selection clause must contain explicit language regarding exclusivity. *See, e.g., Accelerated Christian Educ., Inc.,* 925 S.W.2d at 69 (enforcing clause stating that "[i]n any legal action relating to this Agreement, [Accelerated] agrees (a) to the exercise of jurisdiction over it by a state or federal court in San Francisco or San Mateo County, California; and (b) that if [Accelerated] brings the action, it shall be instituted in one of the courts specified in subparagraph (a) above"); *Greenwood v. Tillamook Country Smoker, Inc.,* 857 S.W.2d 654, 655 (Tex.App.-Houston [1st Dist.] 1993, no writ) (enforcing clause stating that "this Agreement shall be governed in all respects by the laws of the State of Oregon . . . and the parties hereby agree that any legal action concerning this Agreement shall be brought in a court of competent jurisdiction in the State of Oregon"); *Barnette v. United Research Co.,* 823 S.W.2d 368, 369 (Tex.App.-Dallas 1991, writ denied) (enforcing clause stating that "the United States District Court for the District of New Jersey or the Superior Court of New Jersey" would be used to resolve disputes between the parties); *Bellair, Inc. v. Aviall of Tex., Inc.,* 819 S.W.2d 895, 897 (Tex.App.-Dallas 1991, writ denied) (enforcing clause stating that "I/We agree that . . . the exclusive venue and

jurisdiction of any dispute or suit arising between Aviall and the undersigned shall lie within the courts of the State of Texas or within the courts of the United States of America located in the Northern District of Texas, Dallas Division"). Given the lack of any explicit language in the Agreement providing for exclusive jurisdiction in Nigeria, we find the parties did not contractually consent to submit to exclusive jurisdiction in Nigeria.

## 2. *Waiver*

 Even if the forum selection clause provided Nigerian courts with exclusive jurisdiction, Mabon would not be able to enforce it based on the doctrine of waiver. A forum selection clause may be waived just as any other contractual right. *See Dart v. Balaam,* 953 S.W.2d 478, 482 (Tex.App.-Fort Worth 1997, no pet.). Here, Mabon acted inconsistently with its right to enforce the forum selection clause by seeking affirmative relief, requesting a jury trial, and paying the jury fee. *See id.* (finding waiver of right to enforce forum selection clause where plaintiff filed suit in non-contracted forum, and where defendant made an unconditional appearance and filed a counterclaim seeking affirmative relief in the non-contracted forum).

Moreover, the enforcement of the forum selection clause after the completion of a trial on the merits would prejudice Afri–Carib. Waiver of the right to enforce a forum selection clause will be found where such enforcement would result in prejudice to the opposing party. *Cf. In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 574 (Tex.1999) (per curiam) (stating that the right to enforce an arbitration clause may be found to have been waived if the party seeking to compel arbitration acts inconsistently with that right resulting in prejudice to the other party). Thus, we find that even if the forum selection clause were enforceable, Mabon waived any right to seek enforcement of it.

## 3. *Procedure for Enforcement*

 Finally, we note that Mabon did not take the proper procedural steps to enforce a contractual forum selection provision. A motion to dismiss is the proper method by which to enforce a forum selection clause. *See Accelerated Christian Educ., Inc.,* 925 S.W.2d at 70; *see also Greenwood,* 857 S.W.2d at 657; *Barnette,* 823 S.W.2d at 369. Mabon did not file such a motion. Mabon, however, claims its pleading entitled "Defendant's Special Appearance and Original Answer" was sufficient to constitute a motion to dismiss Afri–Carib's claims on the basis of the forum selection clause. In this pleading, Mabon states:

MABON LIMITED, Defendant, makes this Special Appearance and states the following:

1. Defendant MABON LIMITED is a limited liability company chartered and domiciled in Nigeria. Defendant maintains no place of business in the State of Texas or United States.

2. Defendant MABON LIMITED has neither entered nor consummated any transaction with [Plaintiff] in the State of Texas or in the United States.

3. The alleged agreement made the basis of this suit is Exhibit "C" attached to and incorporated by reference into the Plaintiff's Original Petition filed herein. By said attachment and incorporation, Plaintiff vouches for the validity and enforceability of said Exhibit "C" in all, and according to all, of its terms and conditions. Said Exhibit "C" expressly provides for exclusive jurisdiction to be vested in the Courts of the Federal District of Nigeria, and exclusive application of the laws of the Federal Government of Nigeria. Said exclusive jurisdiction and application of laws is made mandatory in the language of said Exhibit "C" by use of the word " . . . shall . . ." instead of the word " . . . may . . ." which would be permissive.

WHEREFORE, Defendant prays for the privilege to amend this plea of Spe-

cial Appearance; for Hearing on this Special Appearance; and, that the Court decline to assume jurisdiction in this cause, dismiss Plaintiff's suit, and assess costs against Plaintiff.

Even if Mabon's pleading could be construed as a motion to dismiss based on the forum selection clause, it was incumbent on Mabon to bring the matter to the trial court's attention. Mabon, however, did not set the matter for hearing or take any other affirmative action to obtain a dismissal based on the forum selection clause prior to the trial court's entry of judgment upon trial on the merits. Indeed, Mabon did not seek dismissal based on the forum selection clause until the filing of this restricted appeal.

In sum, we find (1) the forum selection clause does not provide the Nigerian courts with exclusive jurisdiction over this case, (2) Mabon waived its right to enforce the clause, and (3) Mabon did not take the necessary steps to seek a dismissal of this case on the basis of the forum selection clause. Accordingly, Mabon's first issue is overruled.

## B. Arbitration

 Mabon also claims the trial court erred in denying its request for arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of the Federal Arbitration Act. *See* 9 U.S.C. § 202 (1999). Although we note that Mabon did not request arbitration under this or any other provision, it is not necessary for us to reach this issue in this appeal. The proper procedure by which to challenge a state court's denial of a request for arbitration under the Federal Arbitration Act is by mandamus, not appeal. *See In re L & L Kempwood Assocs., Inc.,* 9 S.W.3d 125, 128 (Tex.1999) (per curiam); *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d at 574–75. Therefore, we cannot consider this issue in this direct appeal. Accordingly, Mabon's second issue is overruled.

## C. Fundamental Error

In its third issue, Mabon asserts that it was fundamental error for the trial court to enter judgment in favor of Afri–Carib because (1) the Agreement did not contain all essential terms necessary to constitute an enforceable agreement, (2) public policy prohibits Afri–Carib from recovering its agency commission from Mabon because of Afri–Carib's alleged undisclosed agency to TGSI, and (3) the evidence is legally and factually insufficient to support the award of damages to Afri–Carib.

 It is well-settled that "[f]undamental error exists 'in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly or adversely affected as that interest is declared in the statutes or the Constitution of Texas.' " *Operation Rescue–Nat'l v. Planned Parenthood of Houston & S.E. Tex., Inc.,* 975 S.W.2d 546, 569 (Tex. 1998) (quoting *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 328 (Tex.1993) (quoting *Pirtle v. Gregory,* 629 S.W.2d 919, 920 (Tex.1982)). Mabon states that it is bringing these complaints as unassigned error. Although the rules of appellate procedure require a party to preserve error for appeal, the restricted appeal requires that the appellant did not participate at trial. *See* TEX. R. APP. P. 30, 33.1. Therefore, if the appellant did not participate at trial, it could not have preserved error for appeal. *See Texaco, Inc. v. Central Power & Light Co.,* 955 S.W.2d 373, 375 (Tex.App.-San Antonio 1997, writ denied). Thus, "[i]f the rules of preservation were to be so strictly applied in [restricted appeal] cases, nothing but fundamental error and jurisdictional issues could be appealed via [restricted appeal]. Historically, however, [restricted] appeals have not been so limited." *Id.* In a restricted appeal, the appellant is entitled to the same scope of review as in an ordinary appeal. *See Norman Communications,* 955 S.W.2d at 270. Therefore, it is not necessary for Mabon to establish fundamental error, and we will review each of these complaints by

the same standard as we apply to ordinary appeals.

### 1. Essential Terms of the Agreement

██ Mabon asserts that the Agreement was not enforceable because there was no meeting of the minds with respect to all essential terms of the Agreement, as required for the formation of a valid contract. The Agreement provides:

> It is agreed and understood that the "contacts" of each party hereto are and shall be recognized by the other party as exclusive and valuable "contracts." Neither of the parties will produce any contracts or agreements with any of the other parties' sources and/or clients, save and except with a commission agreement being drawn up to full satisfaction of the introducing party.

██ Mabon contends that because the terms of the subsidiary agreements, which were to be "drawn up to [the] full satisfaction of the introducing party," were open to future negotiations, there was no meeting of the minds with respect to all the essential terms of the Agreement. To be enforceable, a contract must define all essential terms sufficiently to allow the court to determine the obligations of the parties. *See McCulley Fine Arts Gallery, Inc. v. X Partners*, 860 S.W.2d 473, 477 (Tex.App.-El Paso 1993, no writ). However, the parties may agree upon certain contractual terms and leave other matters for later negotiations. *See Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555 (Tex. 1972); *Frank B. Hall & Co. v. Buck*, 678 S.W.2d 612, 629 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). It is only when an essential term of a contract is left open for future negotiations that there is no binding contract, but only an agreement to agree. *See McCulley Fine Arts Gallery, Inc.*, 860 S.W.2d at 477; *Pine v. Gibraltar Sav. Ass'n*, 519 S.W.2d 238, 244 (Tex.Civ.App.-Houston [1st Dist.] 1974, writ ref'd n.r.e.).

The "full satisfaction" language in the Agreement merely raises a fact issue concerning whether the parties intended for the Agreement to be a binding and enforceable contract. *See Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex. 1988) (finding that clause in contract stating "subject to legal documentation contract to be drafted by [attorney]" raised question of fact concerning whether terms embodied in writings were intended to be final expressions or preliminary negotiations). As such, this language is not conclusive regarding the parties' intent to contract. *See id.*

Mabon did not participate in the trial. There was no evidence presented showing that the parties did not intend to be bound by the Agreement. The trial court, by entering judgment in favor of Afri–Carib, necessarily found that the parties intended to form a binding contract. The parties to the Agreement agreed to share certain information regarding their respective contacts and to award commissions or finder's fees to certain parties in a specified percentage of the gross profits received from ventures entered into with third parties introduced as a result of the Agreement. These are the essential terms of the Agreement. The drafting of commission agreements to the "full satisfaction" of the other parties to the Agreement does not constitute an essential term of the Agreement. Therefore, having found that the Agreement contains all essential terms, we conclude that it constitutes a binding and enforceable contract.

### 2. Dual Agency

██ Mabon further contends that the contract upon which Afri–Carib bases its cause of action is an oral commission agreement between Afri–Carib and Mabon, under which Afri–Carib, acting as agent for Mabon, introduced Mabon to TGSI. Furthermore, Mabon alleges that Afri–Carib secretly accepted and appropriated compensation from TGSI while acting as Mabon's agent in the same transaction. Mabon claims that public policy prohibits Afri–Carib's recovery of an agent's com-

mission because Mabon had no knowledge of the undisclosed dual agencies of Afri–Carib to both Mabon and TGSI. *See Bute v. Stickney,* 160 S.W.2d 302, 305 (Tex.Civ. App.-San Antonio 1942, writ ref'd w.o.m.) (holding that an agent's undisclosed agency prevented recovery of commission from principal who had no knowledge of the agent's disloyalty). To the contrary, we find nothing in the Agreement to support Mabon's assertion of an agency relationship between Mabon and Afri–Carib; instead, it is a joint venture agreement. Therefore, public policy does not prohibit Afri–Carib from recovering its share of the commission from the Mabon/TGSI venture.

### 3. Damages

Mabon also challenges the legal and factual sufficiency of the evidence supporting the award of damages resulting from the breach of the Agreement. When reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences tending to support the trial court's finding, and disregard all contrary evidence and inferences. *See Southwestern Bell Mobile Sys. v. Franco,* 971 S.W.2d 52, 54 (Tex.1998) (per curiam). A no evidence point will be sustained if there is no more than a scintilla of evidence to support the finding. *See General Motors Corp. v. Sanchez,* 997 S.W.2d 584, 588 (Tex.1999). In conducting a factual sufficiency review, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding, and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

Mabon complains that the only evidence Afri–Carib introduced in support of contractual damages was evidence of the sales revenues which TGSI paid to Mabon. Mabon asserts that those sales revenues include the funds which Mabon was required to pay to the Nigerian Ministry of Petroleum Resources. Mabon asks this court to take judicial notice of the pleadings in Afri–Carib's garnishment action against TGSI, wherein TGSI states in its answer to the writ of garnishment that "[i]n the usual course, TGS would remit both the funds to Mabon Limited and funds due to the Ministry to Mabon Limited for distribution. Those funds due to the Ministry are not the property of Mabon Limited and should be outside the scope of any garnishment order."

Afri–Carib presented evidence of the amount of payments Mabon received from TGSI. Mabon was not present to object to the evidence introduced at trial, cross-examine Afri–Carib's president about the payments, or otherwise rebut Afri–Carib's evidence of the payments from TGSI to Mabon. Moreover, the pleadings from the garnishment action were not before the trial court at the time of the trial. Therefore, this court may not consider those pleadings. *See Crossley v. Staley,* 988 S.W.2d 791, 794 (Tex.App.-Amarillo 1999, no pet.); *Farmer v. Ben E. Keith Co.,* 919 S.W.2d 171, 176 (Tex.App.-Fort Worth 1996, no writ); *Waddy v. City of Houston,* 834 S.W.2d 97, 101 (Tex.App.-Houston [1st Dist.] 1992, writ denied); *Marek v. Tomoco Equip. Co.,* 738 S.W.2d 710, 712 (Tex. App.-Houston [14th Dist.] 1987, no writ). We will not take judicial notice of the pleadings in the garnnishment action on appeal. We find the evidence in the record is legally and factually sufficient to support the award of damages. Mabon's third issue is overruled.

### D. Attorney's Fees

In its final issue on appeal, Mabon asserts that even if the Agreement is upheld as a valid contract, the $300,000 award of attorney's fees must be reformed because the trial court abused its discretion in making that award. There are two bases on which Afri–Carib is entitled to reasonable attorney's fees: (1) by contractual provision in the Agreement, and (2) by statutory provision under the Texas Civil Practice and Remedies Code. *See* TEX.

**302**

Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 1997).

 The trial court's award of attorney's fees will not be disturbed absent an abuse of discretion. *See Long Trusts v. Atlantic Richfield Co.*, 893 S.W.2d 686, 687 (Tex.App.-Texarkana 1995, no writ). The test for whether the trial court has abused its discretion is whether it acted without reference to any guiding rules and principles, that is, whether the court's action was arbitrary or unreasonable. *See id.* The trial court may determine a reasonable fee for legal services based upon its knowledge of usual and customary rates and its review of the file, even if no other evidence is offered. *See id.; Budd v. Gay*, 846 S.W.2d 521, 524 (Tex.App.-Houston [14th Dist.] 1993, no writ); *Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 626 (Tex.App.-Dallas 1987, writ denied).

 Counsel for Afri–Carib testified that up until the time of trial he had spent 125 hours on this case, which included locating and identifying Mabon's assets in the United States, Europe, and West Africa, investigating the "whereabouts of [Mabon] internationally," preparing the demand, filing the lawsuit, preparing discovery requests, and preparing for trial, at a billing rate of $200 per hour. Afri–Carib's counsel further testified that he estimated that his fees for appeal to the court of appeals and the Texas Supreme Court would be $50,000. He further estimated that his fees for post-judgment collection efforts, which would include perfecting judgment in New York, the United Kingdom, and West Africa, where Mabon's assets are located, and hiring local counsel in other jurisdictions, would be $35,000.

While Mabon challenges on appeal the number of hours that Afri–Carib's counsel spent on this case as excessive, Mabon was not present at trial to challenge Afri–Carib's counsel's testimony or to offer rebuttal evidence. Afri–Carib presented evidence of total reasonable and necessary attorney's fees in an aggregate amount of $110,000.00: $25,000 for trial and trial preparation, $50,000 for appeal to the court of appeals and the Texas Supreme Court, and $35,000 for post-judgment collection efforts. We find the evidence is not legally sufficient to support an award of attorney's fees in the amount of $300,000, a sum which is nearly three times the amount Afri–Carib claimed at trial.

Furthermore, Afri–Carib is not entitled to attorney's fees for postjudgment collection efforts either under the Agreement or by statute. *See Henry v. Insurance Co. of N. Am.*, 879 S.W.2d 366, 369 (Tex.App.-Houston [14th Dist.] 1994, no writ) (holding that attorney's fees are not recoverable by the garnishor against a judgment debtor in a garnishment action); *Robertson v. Robertson*, 608 S.W.2d 245, 247 (Tex.Civ.App.-Eastland 1980, no writ) (finding that there is no substantive law permitting an award of attorney's fees in a suit to collect on a judgment). For these reasons, we find the trial court abused its discretion in awarding Afri–Carib $300,000 in attorney's fees. We sustain Mabon's fourth issue and modify the trial court's judgment by reducing Afri–Carib's award of attorney's fees. Accordingly, the judgment of the trial court is modified to reduce the attorney's fees awarded to Afri–Carib, from $300,000 to $75,000.

The judgment of the trial court, as modified, is affirmed.