Affirmed and Opinion filed October 3, 2002









Affirmed and Opinion filed October 3, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-00784-CV

____________

 

J. ERIC HOLEMAN, Appellant

 

V.

 

THE NATIONAL BUSINESS INSTITUTE, INC.,
Appellee

 



 

On
Appeal from the 152nd District Court

Harris County, Texas

Trial
Court Cause No. 01-16299

 



 

O
P I N I O N








In
this case we address the enforceability of a forum selection clause in the
context of a challenge to a covenant not to compete.  Appellant, 
J. Eric Holeman, sued his former employer, The National Business
Institute, Inc. (ANBI@), seeking a declaration that a covenant not to compete in a
contract between them was unenforceable and alleging that NBI tortiously
interfered with his subsequent employment. 
NBI moved to dismiss Holeman=s suit based on the contract=s forum selection clause, which provided that claims arising
out of the contract would be litigated in Georgia.  Holeman contends the trial court erred in
granting NBI=s motion to dismiss because: (1) the enforcement of a forum
selection clause in a contract containing a covenant not to compete violates
Texas public policy; (2) there was no consideration for the contract; and (3)
the interests of the witnesses and public favor a Texas forum.  We affirm.

FACTUAL
AND PROCEDURAL BACKGROUND

In
March of 1999, Holeman answered an advertisement for employment with NBI, an
Atlanta-based provider of employee recruiting and training services.  NBI hired Holeman to work in Houston, Texas.  In April, 1999, Holeman and NBI entered into
a contract entitled, ARestrictive Covenant Agreement@ (Athe RCA@).  The RCA included a
covenant not to compete and an agreement to maintain the confidentiality of
trade secrets.  The RCA also contained
the following choice of law and forum selection provision:

(e)  This Agreement is made under and shall be
governed by the laws of the State of Georgia in all respects, including matters
of construction, validity and performance. 
In addition, claims arising out of this contract shall be litigated in
courts located within the State of Georgia. 
By execution of this Agreement, the parties hereby consent to the
jurisdiction of any local, state or federal court located within the State of
Georgia . . .

The RCA
acknowledged Holeman to
be an employee-at-will.  With the
exception of eight or nine weeks of out-of-state travel and attendance at an ANBI Management and Training Meeting@ in Atlanta, Holeman performed his
job duties in Texas.

In October of 2000, NBI terminated Holeman=s employment.  Holeman then went to work for Campbell
Concrete & Materials, L.P., in Texas. 
NBI, which considered Campbell a direct competitor, contacted Campbell
and asserted that the RCA prevented Holeman from working for them.  As a result, Campbell suspended Holeman
without pay for an unspecified number of weeks.








Thereafter,
Holeman filed this suit in Harris County, Texas, alleging tortious interference
and seeking a declaratory judgment that the covenant not to compete was
unenforceable.  NBI moved to dismiss the
lawsuit on the basis of the RCA=s forum selection clause. 
The trial court granted NBI=s motion dismissing Holeman=s claims without prejudice.

 

                                                                 DISCUSSION

On
appeal, Holeman argues: (1) the enforcement of a forum selection clause in a
contract containing a covenant not to compete violates Texas public policy; (2)
there was no consideration for the contract; and (3) the interests of the
witnesses and public favor a Texas forum. 
We address Holeman=s first and third issues before his second issue.   A trial court=s decision regarding the validity and enforcement of forum
selection clauses is reviewed  under an
abuse of discretion standard.  Barnett
v. Network Solutions, Inc., 38 S.W.3d 200, 203 (Tex. App.CEastland 2001, pet. denied).

1.       Does the forum selection clause violate
Texas public policy?








In
what appears to be an issue of first impression in this state, Holeman argues
that Texas public policy demands that a forum selection clause in a contract
between an employer and an employee containing a covenant not to compete should
be unenforceable as a matter of law in cases in which the enforceability of the
covenant not to compete is at issue.  In
support of his argument, Holeman relies primarily on DeSantis v. Wackenhut
Corp. for the proposition that enforcement of covenants not to compete is a
matter of fundamental public policy in Texas. 
793 S.W.2d 670, 681 (Tex. 1990). 
Holeman contends that requiring a Texas employee to litigate the
enforceability of a covenant not to compete in a forum other than a Texas court
will undermine Texas= public policy concerns as articulated in DeSantis.  Holeman urges this court to apply the
Texas Supreme Court=s reasoning in DeSantis to the forum selection clause
and hold it unenforceable based on the same policy considerations.          In
DeSantis, the Texas Supreme Court established rules for the treatment of
a contractual choice of law provision in an employment agreement that includes
a covenant not to compete.  Id.
at 681B85.  The choice of law
clause at issue in DeSantis provided that Florida law would govern
disputes between the parties.  Id.
at 678.  Applying sections 187 and 188 of
the Restatement (Second) of Conflict of Laws, the DeSantis court
conducted a detailed examination of the applicable factors and ultimately found
that the law governing enforcement of noncompetition agreements is fundamental
policy in Texas, and therefore, application of the law of another state to
determine the enforceability of such agreements would be contrary to that
policy.  Id. at 679B81.  Our high court explained its rationale
stating:

Neither the RESTATEMENT nor the cases which have followed
section 187 have undertaken a general definition of Afundamental
policy@,
and we need not make the attempt in this case; for whatever its parameters,
enforcement of noncompetition agreements falls well within them.  This Court has held that A[a]n
agreement not to compete is in restraint of trade and will not be enforced
unless it is reasonable.@  As a general
rule, unreasonable restraints of trade, including unreasonable covenants not to
compete, contravene public policy.  What
noncompetition agreements are reasonable restraints upon employees in this
state, therefore, is a matter of public policy. 
Moreover, that policy is fundamental in that it ensures a uniform rule
for enforcement of noncompetition agreements in this state.  Absent such a policy, agreements involving
residents of other states would be controlled by the law and policy of those
states.  An employee of one out‑of‑state
employer might take a competing job and escape enforcement of a covenant not to
compete because of the law of another state, while a neighbor suffered
enforcement of an identical covenant because of the law of a third state.  The resulting disruption of orderly employer‑employee
relations, as well as competition in the marketplace, would be
unacceptable.  Employers would be
encouraged to attempt to invoke the most favorable state law available to
govern their relationship with their employees in Texas or other states.

Id. at 680 (citations omitted). 
The DeSantis court then determined that the noncompetition
agreement at issue was not enforceable under Texas common law.  Id. at 681B684.








Here,
Holeman does not complain about the RCA=s choice of law provision; rather he complains about the forum
selection provision.  Holeman
nevertheless argues that the fundamental policy concerns articulated in DeSantis
are equally applicable in this case. However, choice of law provisions are
governed by a different analysis and Holeman provides us with no authority or
persuasive argument to support his contention that we must abandon the entire
body of law governing the enforceability of forum selection clauses in favor of
his theory.

The
Restatement (Second) of Conflict of Laws demonstrates the differences in the
applicable analyses.  As illustrated in DeSantis,
the application of sections 187 and 188 of the Restatement dealing with
contractual choice of law provisions involves a detailed and complex analysis
of several factors and a balancing of interests between the contractual forum
and the forum in which suit is brought. 
793 S.W.2d at 677B681.  In contrast,
section 80 of the Restatement entitled, ALimitations Imposed By Contract of Parties@
merely provides:  AThe
parties=
agreement as to the place of the action cannot oust a state of judicial
jurisdiction, but such an agreement will be given effect unless it is unfair or
unreasonable.@ 
Restatement (Second) of Conflict of Laws ' 80 (1969). 








In
Bremen v. Zapata Off‑Shore Co., the United States Supreme Court
held that forum selection clauses are prima facie valid and enforceable unless
they are unreasonable under the circumstances.  407 U.S. 1, 10 (1972).  The Court explained that a forum selection
clause may be unreasonable if: (1) enforcement would be so gravely difficult
and inconvenient that for all practical purposes the party resisting
enforcement would be deprived of his day in court; (2) the clause is invalid
for such reasons as fraud or overreaching; or (3) enforcement would contravene
a strong public policy of the forum in which suit is brought, whether declared
by statute or by judicial decision.  Id.
at 15B18.  The party claiming unfairness has a Aheavy
burden of proof.@  Id. at 17.  The comment to section 80 of the
Restatement reflects the same considerations, instructing that a choice of
forum provision may be disregarded Aif it is the result of overreaching or of the unfair use of
unequal bargaining power or if the forum chosen by the parties would be a
seriously inconvenient one for the trial of the particular action.@  Restatement
(Second) of Conflict of Laws ' 80, cmt. a.  Though Bremen
is an admiralty case involving an international transaction, the courts have
applied its principles to forum selection clauses appearing in a variety of
contexts.  See, e.g., Gilman v. Wheat,
First Secs., Inc., 692 A.2d 454, 461 (Mo. App. 1997) (AAfter
1972, the literature abounds with decisions, from both Federal and State
courts, declaring such clauses valid, putting the burden on the party resisting
the clause to show that it is unreasonable, and ultimately enforcing the
clauses.@);
Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc., 680 A.2d
618, 624 (N.J. 1996) (AThe Bremen approach generally has been applied by
federal and state courts confronted by jurisdictional choices involving
forum-selection clauses.@). 

Texas
courts have developed their own approach to the enforceability of forum
selection clauses.  In Texas, forum
selection clauses are valid and enforceable if (1) the parties have
contractually consented to submit to the exclusive jurisdiction of another
state; and (2) the other state recognizes the validity of such provisions.  Mabon Ltd. v. Afri-Carib Enters., Inc., 29
S.W.3d 291, 296 (Tex.
App.CHouston [14th Dist.] 2000, no pet.); Accelerated Christian Educ., Inc. v.
Oracle Corp., 925 S.W.2d 66, 70B71 (Tex. App.CDallas 1996, no writ). 
Nevertheless, a forum selection clause does not bind a Texas court if
the interests of witnesses and the public strongly favor jurisdiction in a
forum other than the one to which the parties agreed in the contract.  See Barnett, 38 S.W.3d at 203; Accelerated
Christian, 925 S.W.2d at 71.








At
least two Texas courts, including this one, have applied the Bremen analysis
in specific instances in which federal law was implicated or required.  See Abacan Technical Servs. Ltd. v. Global
Marine Int=l Servs. Corp.,
994 S.W.2d 839, 843B44 (Tex.
App.CHouston [1st Dist.] 1999, no pet.) (applying Bremen analysis to forum
selection clause in arms-length, international agreement freely negotiated by
sophisticated parties); Stobaugh v. Norwegian Cruise Line Ltd., 5 S.W.3d
232, 234B36
(Tex. App._Houston [14th Dist.] 1999, pet. denied), cert. denied,
531 U.S. 820 (2000) (applying federal maritime law to case involving forum
selection clause in cruise line passenger ticket).  Other Texas courts have recognized and
considered the Bremen analysis when determining the validity of a forum
selection clause in other contexts.  See
Barnett, 38 S.W.3d at 203 (discussing
both Texas and federal law in upholding forum selection clause requiring claims
to be brought in Virginia); Accelerated Christian, 925 S.W.2d at 71 (noting
federal law supports trend toward enforcing valid forum selection clause in
upholding forum selection clause providing for litigation of disputes in
California).








In
his first issue, Holeman argues that the presence of a forum selection clause
in a contract containing a covenant not to compete should be unenforceable as a
matter of fundamental Texas public policy. 
Although Holeman takes the position that federal law does not apply to
this case, he appears to invoke the Bremen analysis by arguing that the
forum selection clause should not be enforced because it would violate a Astrong
public policy@ of Texas.  See Bremen,
407 U.S. at 15.  Texas law has no similar
Apublic
policy@
exception but does provide that a forum selection clause may be disregarded if
the public interest strongly favors a Texas forum.  See Barnett, 38 S.W.3d at 203; Accelerated
Christian, 925 S.W.2d at 71.  Holeman
undoubtedly seeks to avoid reliance on the analysis engendered by Bremen
because it provides that forum selection clauses are prima facie valid and
impose a Aheavy burden@ on the party seeking to avoid the effect of the clause.  See Bremen, 407 U.S. at 10, 17; Abacan,
994 S.W.2d at 844.  Not surprisingly, NBI
urges the application of the Bremen presumption of validity and the
placement of the burden on Holeman to demonstrate that the clause at issue is
unreasonable.  NBI otherwise responds to
Holeman=s
arguments with an amalgam of state and federal decisions.  Because we find that Holeman has not
demonstrated that the trial court erred in dismissing his claims under either a
Bremen analysis or Texas law, we need not resolve any dispute regarding
the appropriate formulation of the law applicable to forum selection clauses. 

As
noted above, Holeman relies upon Texas case law in support of his public policy
argument.[1]  However, in response to decisions of the
Texas Supreme Court, the Texas Legislature, in 1989, passed the Covenants Not
to Compete Act (Athe Act@), a bill adding sections 15.50 and 15.51 to the Texas Business
and Commerce Code.  See Light v.
Centel Cellular Co. of Texas, 883 S.W.2d 642, 643 (Tex. 1994).[2]  Under the current version of the Act,
noncompetition agreements are enforceable so long as the restraints imposed are
reasonable as to time, geographical area, and scope of activity restrained, and
the agreement is ancillary to or part of an otherwise enforceable
agreement.  See Tex. Bus. & Com. Code Ann. '
15.50(a).  Significantly, the Texas Legislature
amended the Act in 1993 and added section 15.52, which provides:  

The
criteria for enforceability of a covenant not to compete . . . and the
procedures and remedies provided . . . are exclusive and preempt any other
criteria for enforceability of a covenant not to compete . . . .  

 








Id. ' 15.52; see also Light, 883 S.W.2d at 643B44.  The Texas Supreme Court has interpreted this
provision as a clear signal that the legislature intended the Act to Alargely
supplant the common law@ relating to the enforcement of covenants not to compete.  Light, 883 S.W.2d at 644.  Although Holeman contends generally that the
same fundamental policy considerations articulated in DeSantis are Aimplicit@
in the Act, he fails to direct us to any specific language in the Act to
support this theory.  The Act balances
both the interests of employees and their employers, recognizing that
restraints should be no greater than Anecessary to protect the goodwill or other business interest of
the promisee.@  See Tex. Bus. & Com. Code Ann. ''
15.50(a), 15.51(c).  Thus, Texas will
enforce reasonable restraints on competition that protect legitimate business
interests of the employer.  








Moreover,
in attempting to superimpose the choice of law analysis of DeSantis onto
the law applicable to forum selection clauses, Holeman assumes that another
state, in this case, Georgia, would not apply Texas law.  This assumption is not necessarily
correct.  Enforcing the forum selection clause
does not automatically determine the law applicable to the case.  See  Barnett, 38 S.W.3d at 203 (discussing
both Texas and federal law in upholding forum selection clause requiring claims
to be brought in Virginia); Accelerated Christian, 925 S.W.2d at 71.  Because Holeman has made no effort to show
that a Georgia court would not apply Texas law, Holeman has failed to
demonstrate how enforcement of the forum selection clause would subvert Texas
public policy.[3]  In the absence of any evidence that a Texas
resident would receive inconsistent or inequitable treatment from a Georgia
court, we decline to rule as a matter of law that the presence of a covenant
not to compete in a contract will automatically invalidate a forum selection
clause whenever a Texas resident is involved. 
See Iero v. Mohawk Finishing Prods., Inc., 534 S.E.2d 136, 137B38
(Ga. App. 2000) (declining to consider public policy argument when plaintiff
failed to demonstrate that enforcement of forum selection clause would result
in application of contractual forum=s law in manner that violated Georgia public policy),
Accelerated Christian, 925 S.W.2d at 71.

Holeman
also claims that Texas residents effectively would be denied their day in court
if forum selection clauses in contracts containing covenants not to compete
were enforced.  Holeman argues that the
disparity in bargaining power in favor of the employer renders such clauses
fundamentally unfair, particularly when the employee is already working for the
employer when asked to sign a non-negotiable agreement.  He also argues that the extreme inconvenience
and expense of litigating one=s claims in another state would effectively preclude Texas
residents from bringing suit at all. 
Consequently, Holeman contends, Aforeign@ employers may, with impunity, contractually limit a Texas
citizen=s
right to work in Texas, and, as a result, Texas public policy on noncompetition
agreements is undermined.  

As
Holeman recognizes, a forum selection clause in a non-negotiated form contract
is valid so long as it is not fundamentally unfair.  See Carnival Cruise Lines, 499 U.S. at
594; Stobaugh, 5 S.W.3d at 236. 
The inquiry into fundamental fairness involves the examination of such
factors as: (1) whether the forum was selected to discourage legitimate claims;
(2)  whether the consent to the forum
selection clause was obtained by fraud or overreaching; (3) whether the party
resisting enforcement had adequate notice of the forum selection clause; and (4)
whether the party retained the option of rejecting the contract with impunity
following notice of the forum selection clause. 
See Stobaugh, 5 S.W.3d at 235. 








Here,
Holeman=s
argument focuses on a perceived disparity in bargaining power and the
inconvenience and expense of litigating outside of Texas.  As to the disparity in bargaining power, it
is the unfair use of, not the mere existence of, an unequal bargaining power
that undermines a contract.  See
Barnett, 38 S.W.3d at 204.  The mere
fact that a contract may be a prerequisite to employment does not force the
employee to agree to it; the employee may forego employment with that employer
if the terms of the agreement are not acceptable.  The same rationale applies when a contract is
a prerequisite to an employee=s continued employment at will, because the employer has no
obligation to continue to employ the employee, and the employee has no
obligation to continue working for that employer.  Holeman=s conclusory argument, unsupported by authority, does not
persuade us that the general nature of the employer-employee relationship
requires us to invalidate forum selection clauses in all contracts containing
covenants not to compete.

As
to Holeman=s argument regarding inconvenience and expense, he cites no
authority for his sweeping assertion that an agreement to bring or defend suit
in a forum other than Texas, including the courts of neighboring states, would
impose so great a burden on Texas residents that they would be forced to
abandon their rights in every case.  Nor
does he direct us to any evidentiary support for this conclusion other than his
own affidavit in which he avers generally that it would be too expensive to
pursue litigation in Georgia.  Though
Texas has a significant interest in providing citizens with a forum to resolve
disputes, Stobaugh, 5 S.W.3d at 236, that factor is not solely
determinative because Texas also recognizes the validity of forum selection
clauses and the right of parties to contractually select their forum for future
litigation.  Barnett, 38 S.W.3d at
203; Accelerated Christian, 925 S.W.2d at 71.  Therefore, on this record, we decline to find
that the mere existence of unequal bargaining power and the expense and
inconvenience of litigating in a forum other than Texas renders forum selection
clauses in contracts between 
employers  and employees containing  covenants not to compete automatically
unenforceable.








In
the alternative, Holeman urges this court to hold the forum selection clause
unenforceable on public policy grounds. 
Turning to his specific situation, Holeman contends the RCA=s
forum selection clause is unenforceable because the RCA is an adhesion
contract that only benefits NBI.  Holeman
suggests he had no choice but to sign the RCA, particularly since he was
already under NBI=s employ.  As we have
previously stated, however, mere inequality of bargaining power is not
sufficient, standing alone, to render a contract fundamentally unfair or
unreasonable.  Further, Holeman does not
direct us to evidence in the record supporting 
any claim that he was forced to sign the RCA.  Indeed, in the affidavits Holeman submitted
to the trial court, he stated only that he received the RCA from NBI Aa
day or two@ before he signed it and that he spoke with Mark Levinsky,
President of NBI, over the telephone before he signed it.  He provides no details of his conversation
with Levinsky.  Holeman does not cite to
any evidence demonstrating that he was in any way coerced or threatened into
signing the RCA, or that the RCA was not freely negotiated.  In the absence of such evidence, we cannot
say it would be fundamentally unfair or unreasonable to enforce it.[4]









Holeman
also asserts that if he were required to litigate in Georgia, he would have Ano
choice@
but to decline to pursue the litigation because of the expense involved.  Holeman cites no Texas case to support the
notion that the possibility of additional expense may invalidate an otherwise
valid forum selection clause.  Further, Bremen
instructs that mere inconvenience or additional expense is not the test for
unreasonableness.  Instead, a party
seeking to avoid a forum selection clause must show that litigation in Georgia
will be so gravely difficult and inconvenient that he will for all practical
purposes be deprived of his day in court. 
See Bremen, 407 U.S. at 18. 
Absent such a showing, Athere is no basis for concluding that it would be unfair,
unjust, or unreasonable to hold that party to his bargain.@  Id. 
In his affidavit, Holeman stated he would have to pay the cost of taking
the depositions of his witnesses for use in Georgia, retaining a Georgia
lawyer, and would also incur the expenses of traveling to and from
Georgia.  However, Holeman did not
demonstrate actual or projected expenses or why those expenses would cause him
such grave difficulty that he would be unable to pursue his claims in
Georgia.  Presumably, such expenses were
foreseeable at the time Holeman executed the RCA.  Moreover, Holeman identifies no factor other
than cost in support of his assertion that he would be unable to pursue
litigation in Georgia.  Holeman=s
conclusory statements are not sufficient to support a finding that the forum
selection clause at issue is unreasonable or unfair.

Accordingly,
we decline to find that Texas public policy requires that forum selection
clauses are unenforceable as a matter of law whenever they appear in a contract
between an employer and employee containing a covenant not to compete.  We also decline to find that the forum
selection clause at issue in this case is unenforceable as violative of Texas
public policy.

Holeman=s
first issue is overruled.

2.       Do the interests of the public and
witnesses favor a Texas forum?








In
his third issue, Holeman contends the forum selection clause should not be
enforced because the interests of the public and witnesses strongly favor
jurisdiction in Texas.  As discussed
above, forum selection clauses are enforceable in Texas if (1) the parties have
contractually consented to submit to the exclusive jurisdiction of another
state; and (2) the other state recognizes the validity of such provisions.  Mabon, 29 S.W.3d at 296;
Accelerated, 925 S.W.2d at 70.  A
forum selection clause does not bind a Texas court, however, if the witnesses=
and the public=s interests strongly favor jurisdiction in a forum other than
the one the parties selected in the contract. 
Mabon, 29 S.W.3d at 296; Accelerated, 925 S.W.2d at
71.  Here, Holeman does not dispute that
he signed the RCA containing the forum selection clause nor does he dispute
that Georgia would enforce the forum selection clause.  See Iero, 534 S.E.2d at 137B38.  Thus, in order to avoid enforcement of the
forum selection clause, Holeman must demonstrate that the interests of the
witnesses and public strongly favor jurisdiction in Texas.[5]


Holeman suggests the public policy concerns which the Supreme
Court articulated in DeSantis are synonymous with the public interests
in this case and therefore demand a reversal.
As discussed in response to Holeman=s first issue, however, he has not demonstrated on this record
that the public policy of Texas will be violated or otherwise undermined by the
enforcement of such forum selection clauses. 
Therefore, we do not find that the interests of the public strongly
favor disregarding the forum selection clause in this case.








Holeman
also argues that the interests of the witnesses strongly favor jurisdiction in
Texas because many of the witnesses reside in the Houston area and litigation
of the case in Georgia would cause a hardship on them and him.  The court considered similar arguments and
evidence in Accelerated Christian, in which a Texas purchaser
attempted to avoid the forum selection clause in its contracts with a
California software vendor.  The court
held that the plaintiff waived the right to assert its own inconvenience by
agreeing to the valid forum selection clause. 
Accelerated Christian, 925 S.W.2d at 71 (citing Sarieddine v.
Moussa, 820 S.W.2d 837, 839 (Tex. App.CDallas 1991, writ
denied)).  Consequently,  the court gave little weight to the interests
of the plaintiff=s witnesses, noting instead that the interests of the defendant
arguably favored litigating in the contractually agreed-upon forum of
California, because the defendant=s headquarters was located in California, the plaintiff ordered
the software from California, and the defendant administered the technical
support from California.  The court
concluded that, because many of the potential witnesses appeared to be located
in California, the interests of the witnesses did not strongly favor keeping
the litigation in Texas.  Id.  

Here,
NBI argues that its headquarters is in Georgia, Holeman=s
training took place in Georgia, and NBI=s witnesses reside in Georgia. 
It is possible that the trial court concluded that, as in Accelerated
Christian, the interests of the witnesses did not strongly favor keeping
the litigation in Texas.  We also note
that although Holeman contended in the court below that numerous potential
witnesses reside in the greater Houston area, he presented no evidence that all
of these witnesses would be required to travel to Georgia, or that such travel
would cause undue hardship or expense. 
In fact, considering Holeman=s statement that he would be required to bear the expense of
obtaining the depositions of his witnesses for trial in Georgia, it appears
that his witnesses would be inconvenienced only by appearing in Texas for a
deposition, not traveling to Georgia for trial. 
Given that this motion to dismiss is governed by an abuse of discretion
standard, the trial court=s possible resolution of this dispute in favor of NBI is not
reversible on this basis.  See Barnett,
38 S.W.3d at 203.  We overrule Holeman=s
third issue.

3.       Is the forum selection clause
unenforceable for lack of consideration?

In
Holeman=s
second issue, he contends the forum selection clause is unenforceable because
there was no consideration for the RCA. 
Holeman also argues that this court must resolve the issue of lack of
consideration as a threshold matter, before considering the enforceability of
the forum selection clause.  However, a
court determining whether or not to enforce a forum selection clause will not
inquire into the enforceability of the contract in which that clause is
found.  See Afram Carriers,
Inc. v. Moeykens, 145 F.3d 298, 301 (5th Cir. 1998); Sudduth v.
Occidental Peruana, Inc., 70 F. Supp. 2d 691, 696 (E.D. Tex. 1999);
Barnett, 38 S.W.3d at 205.  Holeman
directs us to no authority that holds otherwise.








Therefore,
once Holeman acknowledged that he had signed the RCA containing the forum
selection clause and an authenticated copy of the agreement was admitted, the
existence of an agreement to litigate in Georgia was established, and Holeman
was required to show that the clause was unenforceable.  Holeman=s second issue is overruled.

Accordingly,
the judgment of the trial court is affirmed.

 

 

 

 

/s/        Eva
M. Guzman

Justice

 

Judgment rendered and Opinion filed
October 3, 2002.

Panel consists of Justices Hudson,
Edelman, and Guzman.

Publish C Tex. R. App. P.
47.3(b).

 

 











[1]  Holeman relies
to a lesser degree upon Hill v. Mobile Auto Trim, Inc., 725 S.W.2d 168
(Tex. 1987).  In addition, Holeman cites
Stobaugh for the proposition that ATexas
has a significant interest in providing its citizens with a forum in which to
resolve civil disputes.@  5 S.W.3d at
236.  However, that case did not involve
a covenant not to compete.  In
Stobaugh,
the court, in considering the enforceability of a forum selection clause in a
cruise line passenger ticket, looked to Carnival Cruise Lines, Inc. v. Shute,
499 U.S. 585 (1991), to find that such clauses are subject to judicial scrutiny
for fundamental fairness.  Id. at
235.  After reviewing the record, the Stobaugh court found
that the clause in that case failed the Afundamental
fairness@ test because
the cruise line company did not provide adequate notice of the clause prior to
purchase and the ticket could not be rejected without penalty once the
existence of the forum selection clause was made known to the purchasers.  Id. at 235B36.






[2]  Although the
DeSantis court acknowledged the passage of the Act while the case was
pending, it determined the Act did not affect the case at hand because it
concluded that the covenant not to compete at issue was unenforceable under
either the Act or the common law.  DeSantis,
793 S.W.2d at 685.  





[3]  In
his reply brief to this court, Holeman argues that the Georgia law of covenants
not to compete is less rigorous than its Texas counterpart, but he did not
argue to the court below that application of Georgia law would yield a
different result.  Accordingly, we do not consider this argument on appeal.





[4]  In support of
his assertion that the RCA is an adhesion contract, Holeman also contends the
RCA was merely a pretext for a noncompetition agreement for which he received Anothing of value.@  For example, he contends the trade secrets
and training offered to him enabled Holeman to perform his job duties for NBI=s benefit, but he was restrained from using them
elsewhere by virtue of the noncompetition and non-disclosure provisions of the
RCA.  Holeman=s argument does not take into consideration the fact
that he received compensation from NBI during the term of his employment.





[5]  In its
response brief, NBI argues in a footnote that the Ainterests of the public and witnesses@ test adopted in Texas is derived from federal forum
non conveniens law and should not be applied to determine the enforceability of
a forum selection clause.  Instead, NBI
asserts, this court should apply the three factors set out in Bremen and
discussed above in the first section of this opinion.  However, NBI did not raise this argument in
its motion to dismiss, and therefore we will not address it here.