**J. Eric HOLEMAN, Appellant,**

v.

**The NATIONAL BUSINESS INSTITUTE, INC., Appellee.**

**No. 14–01–00784–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 3, 2002.

Rehearing Overruled Nov. 7, 2002.

G. Scott Fiddler, Houston, for appellant.

Susan L. Bickley, Houston, for appellee.

Panel consists of Justices HUDSON, EDELMAN, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In this case we address the enforceability of a forum selection clause in the context of a challenge to a covenant not to compete. Appellant, J. Eric Holeman, sued his former employer, The National Business Institute, Inc. ("NBI"), seeking a declaration that a covenant not to compete in a contract between them was unenforceable and alleging that NBI tortiously interfered with his subsequent employment. NBI moved to dismiss Holeman's suit based on the contract's forum selection clause, which provided that claims arising out of the contract would be litigated in Georgia. Holeman contends the trial court erred in granting NBI's motion to dismiss because: (1) the enforcement of a forum selection clause in a contract containing a covenant not to compete violates Texas public policy; (2) there was no consideration for the contract; and (3) the interests of the witnesses and public favor a Texas forum. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In March of 1999, Holeman answered an advertisement for employment with NBI, an Atlanta-based provider of employee recruiting and training services. NBI hired Holeman to work in Houston, Texas. In April, 1999, Holeman and NBI entered into a contract entitled, "Restrictive Covenant Agreement" ("the RCA"). The RCA included a covenant not to compete and an agreement to maintain the confidentiality of trade secrets. The RCA also contained the following choice of law and forum selection provision:

> (e) This Agreement is made under and shall be governed by the laws of the State of Georgia in all respects, including matters of construction, validity and performance. In addition, claims arising out of this contract shall be litigated in courts located within the State of Georgia. By execution of this Agreement, the parties hereby consent to the jurisdiction of any local, state or federal court located within the State of Georgia ...

The RCA acknowledged Holeman to be an employee-at-will. With the exception of eight or nine weeks of out-of-state travel and attendance at an "NBI Management and Training Meeting" in Atlanta, Holeman performed his job duties in Texas.

In October of 2000, NBI terminated Holeman's employment. Holeman then went to work for Campbell Concrete & Materials, L.P., in Texas. NBI, which considered Campbell a direct competitor, contacted Campbell and asserted that the RCA prevented Holeman from working for them. As a result, Campbell suspended Holeman without pay for an unspecified number of weeks.

Thereafter, Holeman filed this suit in Harris County, Texas, alleging tortious interference and seeking a declaratory judgment that the covenant not to compete was unenforceable. NBI moved to dismiss the lawsuit on the basis of the RCA's forum

selection clause. The trial court granted NBI's motion dismissing Holeman's claims without prejudice.

## DISCUSSION

■ On appeal, Holeman argues: (1) the enforcement of a forum selection clause in a contract containing a covenant not to compete violates Texas public policy; (2) there was no consideration for the contract; and (3) the interests of the witnesses and public favor a Texas forum. We address Holeman's first and third issues before his second issue. A trial court's decision regarding the validity and enforcement of forum selection clauses is reviewed under an abuse of discretion standard. *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 203 (Tex.App.-Eastland 2001, pet. denied).

### 1. Does the forum selection clause violate Texas public policy?

In what appears to be an issue of first impression in this state, Holeman argues that Texas public policy demands that a forum selection clause in a contract between an employer and an employee containing a covenant not to compete should be unenforceable as a matter of law in cases in which the enforceability of the covenant not to compete is at issue. In support of his argument, Holeman relies primarily on *DeSantis v. Wackenhut Corp.* for the proposition that enforcement of covenants not to compete is a matter of fundamental public policy in Texas. 793 S.W.2d 670, 681 (Tex.1990). Holeman contends that requiring a Texas employee to litigate the enforceability of a covenant not to compete in a forum other than a Texas court will undermine Texas' public policy concerns as articulated in *DeSantis*. Holeman urges this court to apply the Texas Supreme Court's reasoning in *DeSantis* to the forum selection clause and hold it unenforceable based on the same policy considerations.

■ In *DeSantis*, the Texas Supreme Court established rules for the treatment of a contractual choice of law provision in an employment agreement that includes a covenant not to compete. *Id.* at 681–85. The choice of law clause at issue in *DeSantis* provided that Florida law would govern disputes between the parties. *Id.* at 678. Applying sections 187 and 188 of the Restatement (Second) of Conflict of Laws, the *DeSantis* court conducted a detailed examination of the applicable factors and ultimately found that the law governing enforcement of noncompetition agreements is fundamental policy in Texas, and therefore, application of the law of another state to determine the enforceability of such agreements would be contrary to that policy. *Id.* at 679–81. Our high court explained its rationale stating:

Neither the RESTATEMENT nor the cases which have followed section 187 have undertaken a general definition of "fundamental policy", and we need not make the attempt in this case; for whatever its parameters, enforcement of noncompetition agreements falls well within them. This Court has held that "[a]n agreement not to compete is in restraint of trade and will not be enforced unless it is reasonable." As a general rule, unreasonable restraints of trade, including unreasonable covenants not to compete, contravene public policy. What noncompetition agreements are reasonable restraints upon employees in this state, therefore, is a matter of public policy. Moreover, that policy is fundamental in that it ensures a uniform rule for enforcement of noncompetition agreements in this state. Absent such a policy, agreements involving residents of other states would be controlled by the law and policy of those states. An em-

ployee of one out-of-state employer might take a competing job and escape enforcement of a covenant not to compete because of the law of another state, while a neighbor suffered enforcement of an identical covenant because of the law of a third state. The resulting disruption of orderly employer-employee relations, as well as competition in the marketplace, would be unacceptable. Employers would be encouraged to attempt to invoke the most favorable state law available to govern their relationship with their employees in Texas or other states.

*Id.* at 680 (citations omitted). The *DeSantis* court then determined that the noncompetition agreement at issue was not enforceable under Texas common law. *Id.* at 681–84.

Here, Holeman does not complain about the RCA's choice of law provision; rather he complains about the forum selection provision. Holeman nevertheless argues that the fundamental policy concerns articulated in *DeSantis* are equally applicable in this case. However, choice of law provisions are governed by a different analysis and Holeman provides us with no authority or persuasive argument to support his contention that we must abandon the entire body of law governing the enforceability of forum selection clauses in favor of his theory.

▪ The Restatement (Second) of Conflict of Laws demonstrates the differences in the applicable analyses. As illustrated in *DeSantis,* the application of sections 187 and 188 of the Restatement dealing with contractual choice of law provisions involves a detailed and complex analysis of several factors and a balancing of interests between the contractual forum and the forum in which suit is brought. 793 S.W.2d at 677–81. In contrast, section 80 of the Restatement entitled, "Limitations Imposed By Contract of Parties" merely provides: "The parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but such an agreement will be given effect unless it is unfair or unreasonable." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 80 (1969).

▪ In *Bremen v. Zapata Off-Shore Co.,* the United States Supreme Court held that forum selection clauses are prima facie valid and enforceable unless they are unreasonable under the circumstances. 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The Court explained that a forum selection clause may be unreasonable if: (1) enforcement would be so gravely difficult and inconvenient that for all practical purposes the party resisting enforcement would be deprived of his day in court; (2) the clause is invalid for such reasons as fraud or overreaching; or (3) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision. *Id.* at 15–18, 92 S.Ct. 1907. The party claiming unfairness has a "heavy burden of proof." *Id.* at 17, 92 S.Ct. 1907. The comment to section 80 of the Restatement reflects the same considerations, instructing that a choice of forum provision may be disregarded "if it is the result of overreaching or of the unfair use of unequal bargaining power or if the forum chosen by the parties would be a seriously inconvenient one for the trial of the particular action." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 80, cmt. a. Though *Bremen* is an admiralty case involving an international transaction, the courts have applied its principles to forum selection clauses appearing in a variety of contexts. *See, e.g., Gilman v. Wheat, First Secs., Inc.,* 345 Md. 361, 692 A.2d 454, 461 (1997) ("After 1972, the literature abounds with decisions, from both Federal and State courts, declaring such clauses

valid, putting the burden on the party resisting the clause to show that it is unreasonable, and ultimately enforcing the clauses."); *Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.*, 146 N.J. 176, 680 A.2d 618, 624 (1996) ("The *Bremen* approach generally has been applied by federal and state courts confronted by jurisdictional choices involving forum-selection clauses.").

■■■ Texas courts have developed their own approach to the enforceability of forum selection clauses. In Texas, forum selection clauses are valid and enforceable if (1) the parties have contractually consented to submit to the exclusive jurisdiction of another state; and (2) the other state recognizes the validity of such provisions. *Mabon Ltd. v. Afri–Carib Enters., Inc.*, 29 S.W.3d 291, 296 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 70–71 (Tex.App.-Dallas 1996, no writ). Nevertheless, a forum selection clause does not bind a Texas court if the interests of witnesses and the public strongly favor jurisdiction in a forum other than the one to which the parties agreed in the contract. *See Barnett*, 38 S.W.3d at 203; *Accelerated Christian*, 925 S.W.2d at 71.

At least two Texas courts, including this one, have applied the *Bremen* analysis in specific instances in which federal law was implicated or required. *See Abacan Technical Servs. Ltd. v. Global Marine Int'l Servs. Corp.*, 994 S.W.2d 839, 843–44 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (applying *Bremen* analysis to forum selection clause in arms-length, international agreement freely negotiated by sophisticated parties); *Stobaugh v. Norwegian Cruise Line Ltd.*, 5 S.W.3d 232, 234–36 (Tex.App.Houston [14th Dist.] 1999, pet. denied), *cert. denied*, 531 U.S. 820, 121 S.Ct. 62, 148 L.Ed.2d 28 (2000) (applying federal maritime law to case involving forum selection clause in cruise line passenger ticket). Other Texas courts have recognized and considered the *Bremen* analysis when determining the validity of a forum selection clause in other contexts. *See Barnett*, 38 S.W.3d at 203 (discussing both Texas and federal law in upholding forum selection clause requiring claims to be brought in Virginia); *Accelerated Christian*, 925 S.W.2d at 71 (noting federal law supports trend toward enforcing valid forum selection clause in upholding forum selection clause providing for litigation of disputes in California).

■■■ In his first issue, Holeman argues that the presence of a forum selection clause in a contract containing a covenant not to compete should be unenforceable as a matter of fundamental Texas public policy. Although Holeman takes the position that federal law does not apply to this case, he appears to invoke the *Bremen* analysis by arguing that the forum selection clause should not be enforced because it would violate a "strong public policy" of Texas. *See Bremen*, 407 U.S. at 15, 92 S.Ct. 1907. Texas law has no similar "public policy" exception but does provide that a forum selection clause may be disregarded if the public interest strongly favors a Texas forum. *See Barnett*, 38 S.W.3d at 203; *Accelerated Christian*, 925 S.W.2d at 71. Holeman undoubtedly seeks to avoid reliance on the analysis engendered by *Bremen* because it provides that forum selection clauses are prima facie valid and impose a "heavy burden" on the party seeking to avoid the effect of the clause. *See Bremen*, 407 U.S. at 10, 17, 92 S.Ct. 1907; *Abacan*, 994 S.W.2d at 844. Not surprisingly, NBI urges the application of the *Bremen* presumption of validity and the placement of the burden on Holeman to demonstrate that the clause at

issue is unreasonable. NBI otherwise responds to Holeman's arguments with an amalgam of state and federal decisions. Because we find that Holeman has not demonstrated that the trial court erred in dismissing his claims under either a *Bremen* analysis or Texas law, we need not resolve any dispute regarding the appropriate formulation of the law applicable to forum selection clauses.

■■■ As noted above, Holeman relies upon Texas case law in support of his public policy argument.[1] However, in response to decisions of the Texas Supreme Court, the Texas Legislature, in 1989, passed the Covenants Not to Compete Act ("the Act"), a bill adding sections 15.50 and 15.51 to the Texas Business and Commerce Code. *See Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 643 (Tex. 1994).[2] Under the current version of the Act, noncompetition agreements are enforceable so long as the restraints imposed are reasonable as to time, geographical area, and scope of activity restrained, and the agreement is ancillary to or part of an otherwise enforceable agreement. *See* TEX. BUS. & COM.CODE ANN. § 15.50(a). Significantly, the Texas Legislature amended the Act in 1993 and added section 15.52, which provides:

The criteria for enforceability of a covenant not to compete ... and the procedures and remedies provided ... are exclusive and preempt any other criteria for enforceability of a covenant not to compete....

*Id.* § 15.52; *see also Light*, 883 S.W.2d at 643–44. The Texas Supreme Court has interpreted this provision as a clear signal that the legislature intended the Act to "largely supplant the common law" relating to the enforcement of covenants not to compete. *Light*, 883 S.W.2d at 644. Although Holeman contends generally that the same fundamental policy considerations articulated in *DeSantis* are "implicit" in the Act, he fails to direct us to any specific language in the Act to support this theory. The Act balances both the interests of employees and their employers, recognizing that restraints should be no greater than "necessary to protect the goodwill or other business interest of the promisee." *See* TEX. BUS. & COM.CODE ANN. §§ 15.50(a), 15.51(c). Thus, Texas will enforce reasonable restraints on competition that protect legitimate business interests of the employer.

■■■ Moreover, in attempting to superimpose the choice of law analysis of *DeSantis* onto the law applicable to forum selection clauses, Holeman assumes that

---

1. Holeman relies to a lesser degree upon *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168 (Tex.1987). In addition, Holeman cites *Stobaugh* for the proposition that "Texas has a significant interest in providing its citizens with a forum in which to resolve civil disputes." 5 S.W.3d at 236. However, that case did not involve a covenant not to compete. In *Stobaugh*, the court, in considering the enforceability of a forum selection clause in a cruise line passenger ticket, looked to *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), to find that such clauses are subject to judicial scrutiny for fundamental fairness. *Id.* at 235. After reviewing the record, the *Stobaugh* court found that the clause in that case failed

the "fundamental fairness" test because the cruise line company did not provide adequate notice of the clause prior to purchase and the ticket could not be rejected without penalty once the existence of the forum selection clause was made known to the purchasers. *Id.* at 235–36.

2. Although the *DeSantis* court acknowledged the passage of the Act while the case was pending, it determined the Act did not affect the case at hand because it concluded that the covenant not to compete at issue was unenforceable under either the Act or the common law. *DeSantis*, 793 S.W.2d at 685.

another state, in this case, Georgia, would not apply Texas law. This assumption is not necessarily correct. Enforcing the forum selection clause does not automatically determine the law applicable to the case. *See Barnett*, 38 S.W.3d at 203 (discussing both Texas and federal law in upholding forum selection clause requiring claims to be brought in Virginia); *Accelerated Christian*, 925 S.W.2d at 71. Because Holeman has made no effort to show that a Georgia court would not apply Texas law, Holeman has failed to demonstrate how enforcement of the forum selection clause would subvert Texas public policy.[3] In the absence of any evidence that a Texas resident would receive inconsistent or inequitable treatment from a Georgia court, we decline to rule as a matter of law that the presence of a covenant not to compete in a contract will automatically invalidate a forum selection clause whenever a Texas resident is involved. *See Iero v. Mohawk Finishing Prods., Inc.*, 243 Ga.App. 670, 534 S.E.2d 136, 137–38 (2000) (declining to consider public policy argument when plaintiff failed to demonstrate that enforcement of forum selection clause would result in application of contractual forum's law in manner that violated Georgia public policy), *Accelerated Christian*, 925 S.W.2d at 71.

Holeman also claims that Texas residents effectively would be denied their day in court if forum selection clauses in contracts containing covenants not to compete were enforced. Holeman argues that the disparity in bargaining power in favor of the employer renders such clauses fundamentally unfair, particularly when the employee is already working for the employer when asked to sign a non-negotiable agreement. He also argues that the extreme inconvenience and expense of litigating one's claims in another state would effectively preclude Texas residents from bringing suit at all. Consequently, Holeman contends, "foreign" employers may, with impunity, contractually limit a Texas citizen's right to work in Texas, and, as a result, Texas public policy on noncompetition agreements is undermined.

As Holeman recognizes, a forum selection clause in a non-negotiated form contract is valid so long as it is not fundamentally unfair. *See Carnival Cruise Lines*, 499 U.S. at 594, 111 S.Ct. 1522; *Stobaugh*, 5 S.W.3d at 236. The inquiry into fundamental fairness involves the examination of such factors as: (1) whether the forum was selected to discourage legitimate claims; (2) whether the consent to the forum selection clause was obtained by fraud or overreaching; (3) whether the party resisting enforcement had adequate notice of the forum selection clause; and (4) whether the party retained the option of rejecting the contract with impunity following notice of the forum selection clause. *See Stobaugh*, 5 S.W.3d at 235.

Here, Holeman's argument focuses on a perceived disparity in bargaining power and the inconvenience and expense of litigating outside of Texas. As to the disparity in bargaining power, it is the unfair use of, not the mere existence of, an unequal bargaining power that undermines a contract. *See Barnett*, 38 S.W.3d at 204. The mere fact that a contract may be a prerequisite to employment does not force the employee to agree to it; the employee may forego employment with that employer if the terms of the agreement are not

---

**3.** In his reply brief to this court, Holeman argues that the Georgia law of covenants not to compete is less rigorous than its Texas counterpart, but he did not argue to the court below that application of Georgia law would yield a different result. Accordingly, we do not consider this argument on appeal.

acceptable. The same rationale applies when a contract is a prerequisite to an employee's continued employment at will, because the employer has no obligation to continue to employ the employee, and the employee has no obligation to continue working for that employer. Holeman's conclusory argument, unsupported by authority, does not persuade us that the general nature of the employer-employee relationship requires us to invalidate forum selection clauses in all contracts containing covenants not to compete.

As to Holeman's argument regarding inconvenience and expense, he cites no authority for his sweeping assertion that an agreement to bring or defend suit in a forum other than Texas, including the courts of neighboring states, would impose so great a burden on Texas residents that they would be forced to abandon their rights in every case. Nor does he direct us to any evidentiary support for this conclusion other than his own affidavit in which he avers generally that it would be too expensive to pursue litigation in Georgia. Though Texas has a significant interest in providing citizens with a forum to resolve disputes, *Stobaugh*, 5 S.W.3d at 236, that factor is not solely determinative because Texas also recognizes the validity of forum selection clauses and the right of parties to contractually select their forum for future litigation. *Barnett*, 38 S.W.3d at 203; *Accelerated Christian*, 925 S.W.2d at 71. Therefore, on this record, we decline to find that the mere existence of unequal bargaining power and the expense and inconvenience of litigating in a forum other than Texas renders forum selection clauses

in contracts between employers and employees containing covenants not to compete automatically unenforceable.

In the alternative, Holeman urges this court to hold the forum selection clause unenforceable on public policy grounds. Turning to his specific situation, Holeman contends the RCA's forum selection clause is unenforceable because the RCA is an adhesion contract that only benefits NBI. Holeman suggests he had no choice but to sign the RCA, particularly since he was already under NBI's employ. As we have previously stated, however, mere inequality of bargaining power is not sufficient, standing alone, to render a contract fundamentally unfair or unreasonable. Further, Holeman does not direct us to evidence in the record supporting any claim that he was forced to sign the RCA. Indeed, in the affidavits Holeman submitted to the trial court, he stated only that he received the RCA from NBI "a day or two" before he signed it and that he spoke with Mark Levinsky, President of NBI, over the telephone before he signed it. He provides no details of his conversation with Levinsky. Holeman does not cite to any evidence demonstrating that he was in any way coerced or threatened into signing the RCA, or that the RCA was not freely negotiated. In the absence of such evidence, we cannot say it would be fundamentally unfair or unreasonable to enforce it.[4]

■ Holeman also asserts that if he were required to litigate in Georgia, he would have "no choice" but to decline to pursue the litigation because of the ex-

---

4. In support of his assertion that the RCA is an adhesion contract, Holeman also contends the RCA was merely a pretext for a noncompetition agreement for which he received "nothing of value." For example, he contends the trade secrets and training offered to him enabled Holeman to perform his job

duties for NBI's benefit, but he was restrained from using them elsewhere by virtue of the noncompetition and non-disclosure provisions of the RCA. Holeman's argument does not take into consideration the fact that he received compensation from NBI during the term of his employment.

pense involved. Holeman cites no Texas case to support the notion that the possibility of additional expense may invalidate an otherwise valid forum selection clause. Further, *Bremen* instructs that mere inconvenience or additional expense is not the test for unreasonableness. Instead, a party seeking to avoid a forum selection clause must show that litigation in Georgia will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. *See Bremen*, 407 U.S. at 18, 92 S.Ct. 1907. Absent such a showing, "there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *Id.* In his affidavit, Holeman stated he would have to pay the cost of taking the depositions of his witnesses for use in Georgia, retaining a Georgia lawyer, and would also incur the expenses of traveling to and from Georgia. However, Holeman did not demonstrate actual or projected expenses or why those expenses would cause him such grave difficulty that he would be unable to pursue his claims in Georgia. Presumably, such expenses were foreseeable at the time Holeman executed the RCA. Moreover, Holeman identifies no factor other than cost in support of his assertion that he would be unable to pursue litigation in Georgia. Holeman's conclusory statements are not sufficient to support a finding that the forum selection clause at issue is unreasonable or unfair.

Accordingly, we decline to find that Texas public policy requires that forum selection clauses are unenforceable as a matter of law whenever they appear in a contract between an employer and employee containing a covenant not to compete. We

also decline to find that the forum selection clause at issue in this case is unenforceable as violative of Texas public policy.

Holeman's first issue is overruled.

## 2. Do the interests of the public and witnesses favor a Texas forum?

■ In his third issue, Holeman contends the forum selection clause should not be enforced because the interests of the public and witnesses strongly favor jurisdiction in Texas. As discussed above, forum selection clauses are enforceable in Texas if (1) the parties have contractually consented to submit to the exclusive jurisdiction of another state; and (2) the other state recognizes the validity of such provisions. *Mabon*, 29 S.W.3d at 296; *Accelerated*, 925 S.W.2d at 70. A forum selection clause does not bind a Texas court, however, if the witnesses' and the public's interests strongly favor jurisdiction in a forum other than the one the parties selected in the contract. *Mabon*, 29 S.W.3d at 296; *Accelerated*, 925 S.W.2d at 71. Here, Holeman does not dispute that he signed the RCA containing the forum selection clause nor does he dispute that Georgia would enforce the forum selection clause. *See Iero*, 534 S.E.2d at 137–38. Thus, in order to avoid enforcement of the forum selection clause, Holeman must demonstrate that the interests of the witnesses and public strongly favor jurisdiction in Texas.[5]

Holeman suggests the public policy concerns which the Supreme Court articulated in *DeSantis* are synonymous with the public interests in this case and therefore de-

---

**5.** In its response brief, NBI argues in a footnote that the "interests of the public and witnesses" test adopted in Texas is derived from federal forum non conveniens law and should not be applied to determine the enforceability of a forum selection clause. Instead, NBI asserts, this court should apply the three factors set out in *Bremen* and discussed above in the first section of this opinion. However, NBI did not raise this argument in its motion to dismiss, and therefore we will not address it here.

mand a reversal. As discussed in response to Holeman's first issue, however, he has not demonstrated on this record that the public policy of Texas will be violated or otherwise undermined by the enforcement of such forum selection clauses. Therefore, we do not find that the interests of the public strongly favor disregarding the forum selection clause in this case.

■■■ Holeman also argues that the interests of the witnesses strongly favor jurisdiction in Texas because many of the witnesses reside in the Houston area and litigation of the case in Georgia would cause a hardship on them and him. The court considered similar arguments and evidence in *Accelerated Christian,* in which a Texas purchaser attempted to avoid the forum selection clause in its contracts with a California software vendor. The court held that the plaintiff waived the right to assert its own inconvenience by agreeing to the valid forum selection clause. *Accelerated Christian,* 925 S.W.2d at 71 (citing *Sarieddine v. Moussa,* 820 S.W.2d 837, 839 (Tex.App.-Dallas 1991, writ denied)). Consequently, the court gave little weight to the interests of the plaintiff's witnesses, noting instead that the interests of the defendant arguably favored litigating in the contractually agreed-upon forum of California, because the defendant's headquarters was located in California, the plaintiff ordered the software from California, and the defendant administered the technical support from California. The court concluded that, because many of the potential witnesses appeared to be located in California, the interests of the witnesses did not strongly favor keeping the litigation in Texas. *Id.*

Here, NBI argues that its headquarters is in Georgia, Holeman's training took place in Georgia, and NBI's witnesses reside in Georgia. It is possible that the trial court concluded that, as in *Accelerated Christian,* the interests of the witnesses did not strongly favor keeping the litigation in Texas. We also note that although Holeman contended in the court below that numerous potential witnesses reside in the greater Houston area, he presented no evidence that all of these witnesses would be required to travel to Georgia, or that such travel would cause undue hardship or expense. In fact, given Holeman's statement that he would be required to bear the expense of obtaining the depositions of his witnesses for trial in Georgia, it appears that his witnesses would be inconvenienced only by appearing in Texas for a deposition, not traveling to Georgia for trial. Given that this motion to dismiss is governed by an abuse of discretion standard, the trial court's possible resolution of this dispute in favor of NBI is not reversible on this basis. *See Barnett,* 38 S.W.3d at 203. We overrule Holeman's third issue.

### 3. Is the forum selection clause unenforceable for lack of consideration?

■■■ In Holeman's second issue, he contends the forum selection clause is unenforceable because there was no consideration for the RCA. Holeman also argues that this court must resolve the issue of lack of consideration as a threshold matter, before considering the enforceability of the forum selection clause. However, a court determining whether or not to enforce a forum selection clause will not inquire into the enforceability of the contract in which that clause is found. *See Afram Carriers, Inc. v. Moeykens,* 145 F.3d 298, 301 (5th Cir.1998); *Sudduth v. Occidental Peruana, Inc.,* 70 F.Supp.2d 691, 696 (E.D.Tex.1999); *Barnett,* 38 S.W.3d at 205. Holeman directs us to no authority that holds otherwise.

Therefore, once Holeman acknowledged that he had signed the RCA containing the forum selection clause and an authenticated copy of the agreement was admitted, the existence of an agreement to litigate in Georgia was established, and Holeman was required to show that the clause was unenforceable. Holeman's second issue is overruled.

Accordingly, the judgment of the trial court is affirmed.