Petition for Writ of Mandamus Conditionally Granted, and Motion for
Emergency Temporary Relief Denied as Moot, and Opinion filed June 13, 2008








 

Petition
for Writ of Mandamus Conditionally Granted, and Motion for Emergency Temporary
Relief Denied as Moot, and Opinion filed June 13, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00165 -CV

____________

 

IN RE GEORGE F. BOEHME, INSTANTNEWSNETWORK.COM, INC.

 and FORTBENDNOW, INC., Relators

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

O P I N I
O N

Relator
George F. Boehme and two alleged corporate alter egos, InstantNewsNetwork.com,
Inc. and FortBendNow, Inc., have asked in this original proceeding that we
issue a writ of mandamus requiring the respondent[1]
to enforce a contractual forum-selection clause by dismissing the underlying
lawsuit filed by the real party in interest.  We conditionally grant the
petition.








BACKGROUND

On April
28, 2006, relator George F. Boehme sold a group of local newspapers to the real
party in interest, ASP Westward, L.P. d/b/a Houston Community Newspaper (AHCN@).  The Agreement respecting the sale
included a non-compete covenant in which Boehme was not to operate or fund a
newspaper and/or a Alocal advertising-based publication,@ and could not solicit or retain HCN=s employees for employment elsewhere.

HCN
brought the underlying lawsuit on January 14, 2008, charging Boehme and his
alleged alter ego, relator InstantNewsNetwork.com (AINN@), with violating the Agreement=s  non-compete covenant by publishing
FortBendNow.com (AFBN@).  Contemporaneously with the filing of the underlying
lawsuit, HCN sought a temporary restraining order, which was granted by an
ancillary judge.  A hearing on HCN=s request for a temporary injunction
was set for January 25, 2008.  In the interim, the parties engaged in expedited
discovery consisting of a document exchange and five depositions.

On
January 25, 2008, the respondent presided over the hearing on HCN=s request for a temporary
injunction.  Following a two-day hearing, the trial court granted a temporary
injunction against relators and restructured its docket to set the case for a
prompt trial during the two-week docket beginning March 24, 2008.  The
injunction order was then signed on January 30th.

On
February 1, 2008, two days after entry of the temporary injunction, relators
requested dismissal of HCN=s lawsuit pursuant to a forum-selection clause that had been
included in the Agreement.  That clause provides as follows:








10.12 Forum:
Service of Process.  Any legal suit, action or proceeding brought by any
party or any of its Affiliates arising out of or based upon this Agreement
shall only be instituted in any federal or state court in New York County, New
York, and each party waives any objection which it may now or hereafter have to
the laying of venue of any such proceeding, and irrevocably submits to the
jurisdiction of such courts in any such suit, action or proceeding.

After relators moved to
dismiss the underlying litigation, both Boehme and HCN filed actions in New
York state court.  Following two hearings, the respondent denied relators= dismissal motion on February 25,
2008.  This mandamus action followed.

                                                       STANDARD
OF REVIEW

Mandamus
relief will lie if the relator establishes a clear abuse of discretion for
which there is no adequate remedy by appeal.  In re AutoNation, Inc.,
228 S.W.3d 663, 667 (Tex. 2007) (orig. proceeding).  A trial court clearly
abuses its discretion if it reaches a decision so arbitrary and unreasonable as
to constitute a clear and prejudicial error of law.  Walker v. Packer,
827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).  With respect to the
resolution of factual issues, we will not disturb the trial court=s ruling unless the record clearly
demonstrates that the trial court could reasonably have reached only one
decision.  See id. at 839-40.  By contrast, review of a trial court=s determination of legal principles
is much less deferential.  See id. at 840.  A trial court has no
discretion in determining what the law is, or in applying the law to the facts;
therefore, a clear failure by the trial court to analyze or apply the law
correctly constitutes an abuse of discretion.  Id.

                                                FORUM-SELECTION CLAUSES








Until
relatively recently, Texas courts used a different analysis than did federal
courts to determine the enforceability of forum-selection clauses.  See
Deep Water Slender Wells v. Shell Int=l Exploration & Prod., Inc.., 234 S.W.3d 679, 687 (Tex. App.BHouston [14th Dist.] 2007, pet.
filed).  The Supreme Court has now adopted the standard employed by federal
courts.  See id.  Under the new standard, a trial court must
presume that a mandatory forum-selection clause is valid and enforceable.  Id.
at 692 (citing In re AIU Ins. Co., 148 S.W.3d 109, 111-12 (Tex. 2004)
(orig. proceeding)).  This holding comports with the principle that parties
generally are free to negotiate agreements as they see fit.  Autonation,
228 S.W.3d at 668.  Therefore, a trial court must give such a clause full
effect absent a strong showing by the resisting party that the clause should be
set aside because (1) the clause is invalid based upon reasons such as fraud,
undue influence, or overweening bargaining power; or (2) enforcement would be
unreasonable and unjust.  Deep Water, 234 S.W.3d at 692 (citing M/S
Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10-15, 92 S.Ct. 1907, 1913-16
(1972)).

The
trial court did not specify its reasoning for denying relators= motion to dismiss.  Nevertheless, we
will uphold the order on any grounds that are supported by the record.  See
Luxenberg v. Marshall, 835 S.W.2d 136, 141-42 (Tex. App.BDallas 1992, orig. proceeding).  HCN
raises three general grounds in support of the trial court=s order.  First, HCN contends that
enforcement of the clause would be unjust because it would contravene a strong
Texas public policy against forum shopping.  Second, it argues that Boehme
waived enforcement of the clause.  Third, HCN urges that we apply the doctrines
of laches and quasi-estoppel to deny relators= mandamus petition.

                                                 PUBLIC
POLICY EXCEPTION

Enforcement
of a forum-selection clause here would be unreasonable and unjust if
enforcement would contravene a strong Texas public policy, or if the balance of
convenience strongly favors litigation in Texas and litigation in New York
would be so manifestly and gravely inconvenient to HCN that it would
effectively be deprived of a meaningful day in court.  See Deep Water,
234 S.W.3d at 692-93.  However, a party who seeks to avoid the effects of a
forum-selection clause on the basis of unfairness carries a Aheavy burden.@  See Holeman v. Nat=l Bus. Inst., 94 S.W.3d 91, 97 (Tex. App.BHouston [14th Dist.] 2002, pet.
denied).  HCN seeks to discharge this heavy burden by arguing that, because
Boehme waited until after he lost the temporary injunction hearing to seek
another forum, he violated a Texas public policy against forum shopping.








Texas
courts have recognized an important public policy against forum shopping.  See
Reliant Energy, Inc. v. Gonzalez, 102 S.W.3d 868, 875 (Tex. App.BHouston [1st Dist.] 2003), aff=d, 159 S.W.3d 615 (Tex. 2005); In re Houston Nw.
Partners, Ltd., 98 S.W.3d 777, 780 (Tex. App.BAustin 2003, orig. proceeding [mand.
dism=d]); DB Entm=t v. Windle, 927 S.W.2d 283, 288 (Tex. App.BFort Worth 1996, orig. proceeding
[mand. dism=d]).  HCN contends that Boehme has engaged in improper forum shopping by
testing the respondent=s ruling on the temporary injunction, and then seeking to
re-litigate the same claims in New York.  Boehme responds that, because the
plaintiff (as in Guzman and West) chooses where to file the
lawsuit, a defendant cannot be guilty of forum shopping.  

Although
we do not agree that a defendant could never forum-shop,[2]
we hold that HCN did not satisfy its Aheavy burden@ of demonstrating that enforcement of
the forum-selection clause here would contravene a strong Texas public policy.








Texas
courts have yet to define the term Aforum shopping.@  HCN directs us to the definition
found in Black=s Law Dictionary, in which Aforum shopping@ is defined as Aattempt[ing] to have his action tried
in a particular court or jurisdiction where he feels he will receive the most
favorable judgment or verdict.@  Black=s Law Dictionary 655 (6th ed. 1990).  However, this
definition is not instructive in deciding whether Boehme=s conduct rises to the level of that
type of behavior that violates Texas public policy.  After all, an attorney who
is properly representing his client in a zealous fashion, if faced with a legitimate
decision as to two forums in which his client=s case might be heard, should B to some extent B prefer the forum that presents his
client with the best chance of success.  See generally Tex. Disciplinary
R. Prof=l Conduct 3.01 cmt. 1, reprinted
in Tex. Gov=t Code Ann., tit. 2, subtit. G app. A (Vernon 2005) (Tex.
State Bar R. art. X, ' 9) (AThe advocate has a duty to use legal procedure for the
fullest benefit of the client=s cause, but also a duty not to abuse legal procedure.@).

Thus,
attorneys who abuse the legal process B as through improper forum-shopping B may be sanctioned.  See, e.g., In
re Bennett, 960 S.W.2d 35, 40 (Tex. 1997) (orig. proceeding).  Therein
plaintiffs= attorneys filed sixteen lawsuits, each of which was randomly assigned to
different district courts.  See id. at 36.  The attorneys desired a
particular district court, but none of the first sixteen cases were assigned to
that court.  See id.  The seventeenth lawsuit was.  See id.  Five
days after securing the 105th District Court as the forum of choice, the
attorneys then non-suited all sixteen previous lawsuits.  Id. at 37. 
They admitted that their tactic was designed to get their clients= claims before a particular judge.  See
id.  The trial court sanctioned each lawyer for abuse of the judicial
process.  See id. at 39.  The Texas Supreme Court upheld the sanctions
order:








Plaintiffs= counsel admitted that the filing
scheme was designed to ensure adjudication by a particular judge.  The practice
of filing multiple cases without intent to prosecute most of them, in search of
a court perceived to be sympathetic, subverts random assignment procedures that
are in place in many multi-court counties and is an abuse of the judicial
process.  This type of conduct, if tolerated, breeds disrespect for and
threatens the integrity of our judicial system.

Id. at 40.  In contrast with the
conduct of the attorneys in Bennett, Boehme did no more than participate
in limited discovery B at HCN=s insistence B and defend against the temporary injunction that his opponent
sought.  We hold that the trial court could not have concluded that Boehme
abused the legal process in subsequently invoking the forum-selection clause.[3] 
Therefore, enforcement here would not contravene a strong Texas public policy.








The
mandamus record indicates that it was HCN=s parent company, with the assistance
of its New York lawyers, that drafted the Agreement and selected New York as
the exclusive forum.  Aware of the possibility that Boehme might invoke the
clause, HCN proceeded nonetheless to file their lawsuit in Texas, obtain a
temporary restraining order, and secure a temporary injunction in a forum other
than that prescribed by the forum-selection clause that HCN chose to include in
the parties= Agreement.  Boehme assigns this conduct as forum shopping on HCN=s part that was motivated by tactical
concerns that attorney fees would be recoverable in Texas but not in New York.[4] 
HCN responds that its decision to file in Texas stemmed from concerns that New
York might not have personal jurisdiction over INN and FBN, which are
nonsignatories to the Agreement.

We note
that the Supreme Court has cited forum shopping as one of the reasons to enforce
forum-selection clauses.  See Autonation, 228 S.W.3d at 667-68. 
However, resolution of this issue does not require that we decide whether HCN
engaged in forum shopping.  Nor do we conclude that forum shopping could  never
be an appropriate basis for a trial court to invalidate a forum-selection
clause.  Instead, we conclude that enforcement of the parties= agreed-upon forum-selection clause
would not contravene a strong Texas public policy in this case.

                                                                      WAIVER








Relying
upon the same facts that underpin its public policy argument, HCN next contends
Boehme has waived enforcement of the forum-selection clause.  A forum-selection
clause may be waived as with any other contractual right.  Mabon Ltd. v.
Afri-Carib Enters., Inc., 29 S.W.3d 291, 298 (Tex. App.BHouston [14th Dist.] 2000, no pet.). 
In deciding whether a party has waived a forum-selection clause, the Supreme
Court has repeatedly resorted to cases involving arbitration agreements.  See
AIU Ins. Co., 148 S.W.3d at 121; In re Automated Collection Techs.,
156 S.W.3d 557, 559 (Tex. 2004) (orig. proceeding).  The test for waiver in the
arbitration context asks whether (1) the party seeking arbitration has Asubstantially invoked the judicial
process,@ and (2) the party resisting
arbitration suffered actual prejudice as a result.  See, e.g., Williams
Indust., Inc. v. Earth Dev. Sys. Corp., 110 S.W.3d 131, 135 (Tex. App.BHouston [1st Dist.] 2003, no pet.). 
Implying waiver from a party=s actions is appropriate only if the facts demonstrate that
the party seeking to enforce arbitration actually intended to waive its
rights.  EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 89 (Tex. 1996) (orig.
proceeding).

The
Supreme Court of Texas recently announced that waiver is to be decided on a
case-by-case basis by employing a Atotality of the circumstances@ test.  See Perry Homes v. Cull,
___ S.W.3d ___, 2008 WL 1922978, slip op. at *5 (Tex. May 2, 2008).  While
acknowledging that not all of these factors may be present in a single case, see
id., the Court recommended that the following factors be considered:

1.         whether the movant was the plaintiff, who chose to file in
court, or the defendant, who merely responded;

2.         how long the movant delayed before seeking arbitration;

3.         whether the movant knew of the arbitration clause all along;

4.         how much pretrial activity related to the merits, rather
than arbitrability or jurisdiction;

5.         how much time and expense had been incurred in litigation;

6.         whether the movant sought or opposed arbitration earlier in
the case;

7.         whether the movant filed affirmative claims or dispositive motions;

8.         what discovery would be unavailable in arbitration;

9.         whether activity in court would be duplicated in
arbitration; and

10.       when the case was to be
tried.

See id. at *4-5.  To the extent that these
factors can be applied to this case involving a forum-selection clause, we
endeavor to do so.








The
conduct that HCN contends amounts to waiver consisted of (1) deposing three
witnesses, (2) producing two witnesses for deposition, (3) exchanging documents
with HCN, and (4) participating in a temporary injunction hearing.  In our
opinion, these limited activities do not constitute waiver under the Perry
Homes test.  Boehme, who moved to enforce the clause, is the defendant
below and merely responded to HCN=s suit.  The record does not indicate
whether Boehme was aware of the existence of the clause; although he is
described as a sophisticated businessman, HCN B not Boehme B drafted the Agreement and selected
New York as the exclusive forum for disputes.  Unlike in Perry Homes, in
which the movants vehemently opposed arbitration until the very eve of the
trial setting, see id. at *2, the forum-selection clause was not raised
by any party until Boehme=s motion to dismiss.  Nor did Boehme seek affirmative relief
below, other than the dismissal of the lawsuit pursuant to the forum-selection
clause.

As to
Boehme=s alleged delay in seeking to enforce
the clause, this inquiry appears to be a combination of a temporal component
and one asking about the extent to which discovery had been completed.  See
id. at *8.  Only eighteen days passed between the filing of suit and Boehme=s motion to dismiss and, as this rule
is one of proportion, we note that Boehme=s enforcement motion was filed less
than one-third of the way through this litigation (counting from the date suit
was filed to the then-scheduled trial date).  This is not merely a temporal
analysis, however:

[I]n view
of the written discovery and depositions already completed, the record is
nevertheless clear that most of the discovery in the case had already been
completed before the Culls requested arbitration.  The rule that one cannot
wait until Athe eve of trial@ to
request arbitration is not limited to the evening before trial; it is a rule of
proportion that is implicated here.

Id.  HCN contends that discovery is
substantially complete, as was evidenced by the trial court=s willingness to place the case on
the trial docket fewer than sixty days after the hearing on the temporary
injunction.  








The Adelay@ factors from Perry Homes do
not translate well from the arbitration context.  One of the benefits of
arbitration is that it severely limits pretrial discovery.  See id. In
the arbitration context, then, engaging in significant discovery can be
inconsistent with an eleventh-hour request for arbitration.  See generally
id.  That concern is not as pronounced when the clause in question is
designed not to eliminate or lessen pretrial discovery but, rather, to simply
specify the forum that would resolve the dispute.  Thus, Boehme=s action in participating in five
depositions and exchanging documents is not inconsistent with then seeking to
relocate the dispute to New York state courts.

Texas
courts have held that the following actions did not substantially invoke
the judicial process:

$          Moving to set aside a
default judgment; and requesting a new trial.  See In re Bank One, N.A.,
216 S.W.3d 825, 827 (Tex. 2007) (orig. proceeding).

$          Filing an answer;
propounding one set of eighteen interrogatories and one set of nineteen
requests for production; and moving to compel arbitration within six months
after the filing of suit.  See In re Bruce Terminix Co., 988 S.W.2d 702,
704 (Tex. 1998) (orig. proceeding).

$          Requesting a jury trial;
paying a jury fee; filing a general denial in lieu of a special appearance; and
waiting five months before seeking to enforce the forum-selection clause.  See
AIU Ins. Co., 148 S.W.3d at 121.

$          Moving to dismiss for lack
of jurisdiction; filing original and amended answers and counterclaims;
requesting a jury trial; moving to quash depositions; noticing the deposition
of, and then deposing, the opponent=s corporate representative; drafting
an agreement to consolidate cases and complete discovery; and requesting that
the opponent pass hearings on summary judgment motions.  See Matthews v. USA
Employment, L.L.C., No. 01-06-01016-CV, 2007 WL 926566, at *7 (Tex. App.BHouston [1st Dist.] March 29, 2007,
no pet.) (mem. op.).








$          Filing a lawsuit; and
agreeing to a temporary injunction.  See Practicehwy.com, Inc. v. Albany IVF
Fertility & Gynecology, PLLC, No. 05-06-00222-CV, 2006 WL 2960838, at
*2 (Tex. App.BDallas Oct. 18, 2006, no pet.) (mem. op.);

$          Filing cross-actions for
indemnity; and pursuing injunctive relief.  See In re D. Wilson Constr. Co.,
196 S.W.3d 774, 783 (Tex. 2006) (orig. proceeding).

$          Waiting until after the
entry of a temporary injunction before invoking the arbitration clause.  See
Metra United Escalante, L.P. v. Lynd Co., 158 S.W.3d 535, 539 (Tex. App.BSan Antonio 2004, no pet.).

$          Answering a lawsuit;
asserting counterclaims; serving requests for disclosure, twenty-eight requests
for production, twenty-five requests for admissions, and nine interrogatories;
and filing a motion to compel discovery.  See Automated Collection Techs.,
156 S.W.3d at 559.

We hold
that, under the Perry Homes factors and the authorities cited above,
Boehme did not substantially invoke the judicial process so as to waive
enforcement of the forum-selection clause.  Moreover, HCN has not demonstrated
that it has suffered prejudice from Boehme=s alleged delay in invoking the
clause.  See Bruce Terminix, 988 S.W.2d at 704.  Delay alone generally
does not establish waiver.  In re Vesta Ins. Group, Inc., 192 S.W.3d
759, 763 (Tex. 2006) (orig. proceeding).  Instead, prejudice connotes an effort
by the moving party to Again an unfair tactical advantage of the opposing party.@  Perry Homes, slip op. at
*8.  Generally, courts have looked to such factors as (1) the movant=s access to information that would
not be discoverable in arbitration, and (2) the opponent=s incurring costs and fees due to the
movant=s actions or delay.[5] 
See Williams Indus., 110 S.W.3d at 135.








The record
does not indicate that Boehme, by waiting until after the temporary injunction
hearing to invoke the clause, accessed information that would not be
discoverable or useable in the New York litigation.  Nor has HCN argued that it
was forced to incur additional attorney fees and costs in pursuing the
temporary injunction.  See Tex. R. App. P. 52.3.  The record does not
show the fees or costs incurred by HCN; how much of those fees or costs were
attributable to the prosecution of the temporary injunction; or whether such
fees and costs were for matters that could benefit HCN elsewhere in this
litigation.  See Williams Indus., 110 S.W.3d at 140.  Even had that
issue been preserved, any prejudice that resulted was probably self-inflicted: APSC chose to initiate proceedings in
a forum other than the one to which it contractually agreed and cannot complain
about any duplication of time or efforts that resulted from that choice.@  Automated Collection Techs.,
156 S.W.3d at 560.

We
therefore hold that relators have not waived their right to enforce the
contractual forum-selection clause.

                                                                      LACHES








HCN
argues further that mandamus relief should be denied on the basis of laches.  AAlthough mandamus is not an equitable
remedy, its issuance is largely controlled by equitable principles.@  In re Xeller, 6 S.W.3d 618,
624 (Tex. App.BHouston [14th Dist.] 1999, orig. proceeding).  Equity aids the diligent,
not those who slumber on their rights.  Rivercenter Assoc. v. Rivera,
858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding).  Therefore, delay alone can
provide ample ground to deny mandamus relief.  See Xeller, 6 S.W.3d at
624.

Unlike
HCN=s waiver argument, which appears to
focus almost entirely on Boehme=s actions, the doctrine of laches is a temporal test that
looks at the date mandamus was filed.  See id. (basing laches finding
exclusively on the fact of a sixteen-month delay, and specifically referencing
the length of delay in citing numerous mandamus cases in which
laches was held to apply).

Boehme
sought to dismiss the Texas litigation only eighteen days after HCN filed
suit.  The dismissal motion was denied on February 25th, and Boehme instituted
this original proceeding on March 4th, fewer than ten days later.  Cases in
which laches has applied to deny mandamus relief have involved delays of
months, not a few days.  See id. (sixteen months); Tarrant County
Hosp. Dist. v. Henry, 52 S.W.3d 434, 452 (Tex. App.BFort Worth 2001, no pet.) (finding
laches as to mandamus action stemming from two orders, entered eight months and
nineteen months before mandamus was filed); In re Little, 998 S.W.2d
287, 290 (Tex. App.BHouston [1st Dist.] 1999, orig. proceeding) (six months); Int=l Awards, Inc. v. Medina, 900 S.W.2d 934, 935-36 (Tex. App.BAmarillo 1995, orig. proceeding)
(four months); Furr=s Supermarkets, Inc. v. Mulanax, 897 S.W.2d 442, 443 (Tex. App.BEl Paso 1995, orig. proceeding)
(same); Rivercenter, 858 S.W.2d at 367-68 (same).

Shorter
delays in filing for mandamus have repeatedly been excused.  See, e.g.,
Strickland v. Lake, 163 Tex. 445, 448, 357 S.W.2d 383, 384 (Tex. 1962)
(orig. proceeding) (two months); B.F. Goodrich Co. v. McCorkle, 865
S.W.2d 618, 621 (Tex. App.BHouston [14th Dist.] 1993, orig. proceeding) (finding a
one-month delay reasonable, even where mandamus may have been used as a
tactical device to derail a trial setting).








We hold
that Boehme did not wait an unreasonable time before seeking mandamus relief. 
We therefore decline to apply the equitable doctrine of laches to Boehme=s claims in this original proceeding.

                                                            QUASI-ESTOPPEL

Finally,
HCN argues that the doctrine of quasi-estoppel should prevent Boehme from
receiving mandamus relief.  Where applicable, quasi-estoppel precludes a party
from asserting, to another=s disadvantage, a right inconsistent with a position
previously taken by that party.  See Eckland Consultants v. Ryder, Stilwell,
Inc., 176 S.W.3d 80, 87 (Tex. App.BHouston [1st Dist.] 2004, no pet.). 
The doctrine applies when it would be unconscionable to allow a party to
maintain a position inconsistent with one in which it had acquiesced, or from
which it had accepted a benefit.  Id.  Generally, quasi-estoppel is
applied in contract actions.  See id. (A[Q]uasi-estoppel forbids a party from
accepting the benefits of a transaction and then subsequently taking an
inconsistent position to avoid corresponding obligations or effects.@) (emphasis added).  Even were we to
extend the doctrine as requested by HCN, we find quasi-estoppel to be
inapplicable to these facts.

HCN
contends that Boehme acquiesced in the trial court=s review of the evidence and opinion Aon the merits of the case,@ and also accepted the benefits of
the trial court=s rearranging of its trial docket to grant a preferential
trial setting.  Boehme=s best outcome from the temporary injunction hearing
would have been a denial of his opponent=s request for affirmative relief.  We
do not agree that Boehme, who was required to incur attorney fees to defend
himself, enjoyed a benefit from HCN=s request for a temporary injunction
against him.  Nor has HCN argued that it was disadvantaged.  See id. 
Therefore, the doctrine of quasi-estoppel is not available to HCN on these
facts.








                                                                CONCLUSION

The
Supreme Court has repeatedly held that a trial court must enforce a mandatory
forum-selection clause, and that the failure to do so constitutes an abuse of
discretion.  See AIU Ins. Co., 148 S.W.3d at 111-12.  Because HCN has
not satisfied its burden of demonstrating that enforcement here would
contravene a strong Texas public policy, and because relators did not waive
their right to enforce the clause, the trial court abused its discretion in
denying relators= motion to dismiss.

Without
hearing oral argument, we conditionally grant the petition for a writ of
mandamus, direct the trial court to vacate its February 28, 2008 order, and
dismiss HCN=s lawsuit against relators.  The writ will issue only if the trial court
fails to act in accordance with this opinion.  We deny as moot relators= Motion for Emergency Temporary
Relief.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

Petition
Conditionally Granted, and Motion for Emergency Temporary Relief Denied as
Moot, and Opinion filed June 13, 2008.

Panel consists of
Justices Anderson, Guzman, and Brown

 

 









            [1]The Honorable
Sharolyn Wood, presiding judge of the 127th Judicial District Court of Harris
County, Texas.





            [2]Although the
defendant does not decide where suit is first filed, he often has the ability
B as here B to
control where suit is to remain after filing.  This type of control
occurs most typically in the context of federal removal, and courts have
recognized that a defendant=s removal
decision can involve forum-shopping motivations.  See, e.g., Yellow Cab Co.
v. Gasper, 994 F. Supp. 344, 349 (W.D. Pa. 1988) (citing Garside v. Osco
Drug, Inc., 702 F. Supp. 19, 22 (D. Mass. 1988) (AThe court found this result particularly compelling
when the defendant, after the case had been assigned to a specific district
judge, assailed its own removal petition with a possible forum-shopping
motive.@) (emphasis added); State ex rel. Diehl v. O=Malley, 95
S.W.3d 82, 91 n.18 (Mo. 2003) (AThe existence
of the federal statute allowing claims to be removed to the federal court
allows defendants a >forum-shopping=
option.@); In re Performance Interconnect Corp., No.
06-34482-BJH-7, 2007 WL 2088281, at *6 (Bankr. N.D. Tex. 2007) (AThe Defendants=
removal of the Fraudulent Transfer Suit involves forum shopping.@).

 

Contrary to relators= argument, then, several state and federal courts have
suggested that forum shopping is not necessarily limited to plaintiffs.  See,
e.g., Ruiz v. Conoco, Inc., 868 S.W.2d 752, 765 (Tex. 1993) (Hightower, J.,
concurring in part and dissenting in part) (AIn
reality, [the defendant] is forum shopping by seeking to transfer the cause to
Harris County.@); Polaris Inv. Mgmt. Corp. v. Abascal, 890
S.W.2d 486, 489 (Tex. App.BSan Antonio
1994, orig. proceeding [leave denied]) (Rickhoff, J., concurring) (ASomething is seriously amiss when plaintiffs or
defendants are allowed to conduct such appalling forum shopping and
tactical maneuvering.@) (emphasis added); Ferens v. John Deere Co.,
494 U.S. 516, 527 (1990) (Scalia, J., dissenting) (A[A] defensive use of section 1404(a) to deprive the
plaintiff of [her] >venue privilege=
... would permit the defendant to engage in forum shopping among States[.]@); In re Air Crash Disaster Near New Orleans, La.,
821 F.2d 1147, 1158 (5th Cir. 1987) (AThus,
our decision today will give some (arbitrary) set of defendants the
ability to >forum-shop[.]=@)
(emphasis in original); Wolinsky v. Oak Tree Imaging, LP, 362 B.R. 770,
781 (S.D. Tex. 2007) (AThere is a strong flavor of forum shopping by the
defendant[.]@).





            [3]HCN claims that Guzman
v. Texas Mutual Insurance Co. and West v. Joseph are analogous to
Boehme=s conduct below, and support the claim that Boehme was
forum shopping.  Guzman v. Texas Mut. Ins. Co., No. 13-06-227-CV, 2007
WL 1439742 (Tex. App.BCorpus Christi May 17, 2007, no pet.) (mem. op.); West
v. Joseph, No. 03-00-00691-CV, 2001 WL 420743 (Tex. App.BAustin Apr. 26, 2001, no pet.) (not designated for
publication). We are not persuaded by these cases.  Although the appellate
court in Guzman affirmed a sanctions order against the attorney, the
court specifically reserved opinion as to whether the conduct in question
constituted improper forum shopping.  See id. at *4.  West, as an
unpublished opinion, has no precedential value.  See Tex. R. App. P.
47.7.  Moreover, we note that the sanctionable conduct in West consisted
of an entire Acourse of conduct calculated solely to harass [his
opponent] and needlessly increase the cost of litigation[.]@  West, 2001 WL 420743, at *4.  To the extent
that HCN analogizes West in its claim that Boehme seeks to waste
judicial resources by relitigating the issues from the temporary injunction
hearing, we note that the attorney in West prosecuted his lawsuit for
almost two years before non-suitingBand
refiling in another courtBon the morning of the trial setting.  See id.
at *2.





            [4]Neither Texas nor
New York allows for the recovery of attorney fees unless authorized by statute
or contract.  See Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299,
310 (Tex. 2006); Marrotta v. Blau, 659 N.Y.S.2d 586, 586 (N.Y. App. Div.
1997).  The contract between the parties does not provide for attorney fees. 
However, Texas Civil Practice and Remedies Code section 38.001 allows a
successful party in a breach-of-contract action to recover its reasonable and
necessary attorney fees.  See id.; Mullins v. Mullins, 889 S.W.2d
550, 554 (Tex. App.BHouston [14th Dist.] 1997, writ denied).  As best we
can determine, New York has no similar statute.  Attorney fees are therefore
not recoverable in a contract action absent specific provision in the contract
itself.  See City of New York v. Zuckerman, 651 N.Y.S.2d 473, 474 (N.Y.
App. Div. 1996).





            [5]HCN argues that
enforcement of the clause at this juncture would prejudice it in three ways. 
First, enforcement of the clause may result in incomplete relief inasmuch as
INN initially asserted an affirmative defense that the New York court lacked
personal jurisdiction.  Second, dismissal of the Texas litigation would
dissolve the protections afforded by the temporary injunction.  Third, HCN
would lose the ability to investigate whether Boehme violated the temporary
injunction.  These arguments, even if taken as true, miss the point of the
prejudice analysis.  The test is not whether enforcement of the clause
would prejudice the opposing party B
which is the argument HCN has presented B
but, rather, whether the moving party=s
alleged invocation of the judicial process resulted in prejudice.  See Bruce
Terminix, 988 S.W.2d at 704.

 

HCN argues further that Boehme=s delay also prejudiced the trial court, which had
arranged its trial docket to accommodate the parties= request for an expedited trial setting.  We need not
address that complaint; the waiver analysis asks whether prejudice has been
suffered by the opposing party, not by others.  See id.